McCAY, J.
There cannot be a particle of doubt, but that in the sale of these mules it was the intent of both parties to go further than make an ordinary sale and purchase upon credit. The vendor of the mules distinctly refused to sell on credit; he was evidently unwilling to part with the possession of his property until he had in hand the price. What was finally done? They both went to the warehouseman who became their mutual agent to receive and sell the cotton, and pay the money. By this agreement the vendor of the mules acquired *an interest in the cotton. It is not necessary to define accurately what was the nature of that interest, as to say, for instance, at whose risk the cotton was. No question of risk or loss arises. The simple question is, does, this cotton go over to the administrator as assets? It does not do' this if the seller of the mules has any interest in it. It may be an undivided interest. It may be only an equita *327 ble interest. If it is any interest at all in the thing, then, so far as that interest extends, it is not assets.
Can any one question that a Court of Equity would have restrained Mr. Brown from disposing of this cotton otherwise than as he had agreed? Had he attempted to divert it from Hardeman & Sparks, would not equity have compelled him to send it to them, as he had contracted to do ?
It does not at all follow that because a sale is not complete, so as to change the possession or give a clear title, the purchaser has no interest in the thing. In the case of real estate a Court of Equity will compel a specific performance to prevent fraud. In cases of personal property, the remedy by suit for damages stands in lieu of this, but the principle is the same, and if it would be a fraud upon the purchaser, and he have no other remedy, the mere fact that the property is personal property, does not defeat the party of his remedy. Equity will decree the specific performance of contracts for leases, or the good will of a-trade, and generally, if there be no adequate remedy at law, equity will grant relief to prevent fraud and injustice: Story’s Eq._, 2 vol.,- sec. 716, 720; 1 Sim & Stuart, 610, 590. See especially the case of Adderly v. Dixon, 1 Sim & Stuart, 610.
Here was a contract between these parties by which "one agreed to deliver to the warehouseman to be sold for the others’ benefit, certain bales of cotton. The consideration was fully paid, and the warehouseman was declared the mutual agent to receive, sell and pay the proceeds. It would be the grossest fraud to permit the administrator to treat this cotton as assets. He has got the mules. If he takes also the cotton, the vendor of the mules is remediless. The estate is insolvent, claims of the highest dignity absorb it.
*It seems to us that this is just such a case as equity takes hold of. Here is an interest in the cotton acquired; ordinarily the law should furnish a remedy in damages. The insolvency of the estate makes that no remedy. We think equity will interfere and declare the cotton or its proceeds not assets until the mules are paid for. The case at bar is, however, stronger for the plaintiff in error than the principal we have discussed demands. The evidence shows that Mr. Brown had spoken to the depot agent, had told of the arrangement he had made, had informed him he would, in a day or two, deliver the cotton at the depot, had actually done this, hauled the cotton to the depot, ordered it sent as he had agreed, marked to the warehouseman, the mutual agent.
We think the case on this ground conclusive. Hardeman & Sparks had at the death of Brown, a special property in this cotton. They could have sued the Railroad Company for neglect or malfeasance. They were the consignees, and- their right over it was a right as the agent of both these parties. Under all the circumstances we think the Court below *328 erred. This cotton does not become assets until the mules are paid for. It was devoted by the deceased to that purpose, for a valuable consideration, and it would be a fraud on the seller of the mules to permit it to be diverted from the purpose Mr. Brown intended. Judgment reversed.