PETER KOSLOWSKI ET AL. V. DAVID M. NEWMAN, ADMIN-
ISTRATOR.

FILED OCTOBER 19, 1905. No. 13,912.

**Administrator: POSSESSION OF REAL ESTATE.** An administrator is not
entitled to the possession of property of which the decedent whose
estate he represents died possessed, as against a defendant who
shows that he is the equitable owner thereof, in the absence of
proof that there are creditors of the estate whose equitable claims
to the property take precedence over that of the defendant.

ERROR to the district court for Platte county: CONRAD
HOLLENBECK, JUDGE. *Reversed.*

*A. M. Post* and *Whitmoyer & Gondring,* for plaintiffs in
error.

*McAllister & Cornelius* and *J. J. Sullivan, contra.*

DUFFIE, C.

David M. Newman, as administrator of the estate of
Frank Mercek, deceased, brought this action against Peter
Koslowski and Mary, his wife, to recover from them money
and the value of certain chattel property of which the said
Mercek died seized, and which was thereafter converted
by the plaintiffs in error. The plaintiffs in error filed
a joint answer, in which they allege title to the money
and property in controversy by virtue of an agreement
with the deceased, a copy of which is as follows: "This
agreement entered into this 28th day of September, A. D.
1901, between Peter Koslowski, of Duncan, Nebraska,
party of the first part, and Frank Mercek, of Duncan,
Nebraska, party of the second part, witnesseth that said
party of the first part hereby agrees to care for, support
and maintain during his life the said party of the second
part, providing him with wholesome and necessary food,
and to also provide him with a suitable bed and bedding,
and, should his resources not be sufficient, the said party of

the first part shall provide him with suitable and neces-
sary clothing; the intention of this agreement being to
provide said party of the second part a home during
the remainder of his lifetime.   The said party of the second
part hereby agrees, in consideration of the provisions
above enumerated, that at the time of his death all of his
property, both real and personal, and of which he dies
seized, shall descend to and belong to said Peter Koslow-
ski, the said party of the first part hereto, free and ex-
empt from any claim from any of the heirs of said party
of the second part; and for this purpose this agreement
shall act as a last will and testament of the said party of
the second part.   This agreement shall be binding upon
the heirs, executors and administrators of the parties to
this agreement.   Witness the hands of the parties hereto
on the day first above written.   Peter Koslowski, Frank
Mercek, his (X) mark, Mary Koslowski.    Witness, G. W.
Phillips."

It is also alleged in the answer that, pursuant to said
agreement, Peter Koslowski continuously from the date
thereof until the death of Mercek on February 7, 1904, pro-
vided a home for, and in all respects maintained and sup-
ported, the said Mercek, and fully kept and performed
all the conditions of said agreement on his part to be
kept and performed, and that said Mercek was at the
date of his death possessed of money to the amount of
$317.52, and no more, and of personal property of the
value of $9.60, and no more; that upon the death of said
Mercek plaintiff in error, Peter Koslowski, took possession
of said money and property, and claims to own and hold
the same under and by virtue of the agreement afore-
said.   It is further alleged that Peter Koslowski, from
the money so received by him, paid the necessary funeral
expenses of said Mercek and for certain church services
requested by said deceased, in all $93.   The answer con-
cludes with a prayer that the title of the said Peter
Koslowski in and to said money and property be quieted
and confirmed, and for general relief.   A reply was filed,

48

admitting the execution of the agreement above set forth
and performance thereof by the said Peter Koslowski, but
charging that said agreement was procured by plaintiffs
in error by means of fraud and undue influence over said
Mercek, and that he was, at the date thereof, mentally en-
feebled by senile dementia, and wholly lacking in the ca-
pacity to contract. At the conclusion of the evidence the
court instructed the jury that the contract with Peter
Koslowski, given in evidence by the defendants below
and under which they claim title to all the personal prop-
erty of the deceased, was not available as a defense as
against the claim of the administrator, and that they
should therefore return a verdict for the plaintiff for the
value of the money and property that the defendants had
reduced to their possession and converted to their own use.
The jury returned a verdict in favor of the administrator
in the sum of $851, and a motion for a new trial being
filed, the court overruled the same upon the plaintiff re-
mitting the sum of $523.48 from the verdict, and entered
judgment against defendants below for $327.52.

We have examined the evidence given on the trial with
some care and it establishes to our satisfaction the follow-
ing: The wife of Frank Mercek died in 1900, at Denton,
Nebraska, where the parties then lived. After the death
of his wife, and in October, 1900, Frank Mercek went to
live with his son, John Mercek, in Polk county, Nebraska,
and continued to live with him until June, 1901, when he
went to Duncan and commenced boarding with Koslowski.
He was, apparently, a strict church member, and one reason
given for his going to Duncan to live was that he might
be near a church, where he could regularly attend services,
his son's farm being 17 miles distant from the church of
which he was a member. We are also inclined to believe
that he was not satisfied with his treatment, and the two
causes combined induced him to remove to Duncan and
make his home with Koslowski. He continued in Koslow-
ski's family as a boarder until his bill amounted to $72,
which he paid, and then requested Koslowski to enter into

the agreement which we have copied above. The evidence tends to show that when he came to Duncan he had $847 in money, and there is also evidence from which it can be fairly inferred that he afterwards sent money to friends in Germany in fulfilment of a request made by his deceased wife. There is not sufficient evidence to support the claim that he was afflicted with any mental disease or disorder, or that he was not capable of transacting business and making the contract with Koslowski with a full understanding of its terms and conditions. The evidence is undisputed that, at the time of his death, being then about 75 years of age, the only money found in his trunk was $317.52, and he was possessed of a few articles of wearing apparel, a bed and some bedding, and other property, all of but little value; and the trial court very properly refused to enter judgment on the verdict until a remittitur was entered by the plaintiff, if any judgment at all was warranted by the pleadings and evidence.

The district court evidently took the view, urged by counsel for defendant in error, that the administrator was entitled to the possession of all personal property of which Mercek died seized, regardless of any contract existing between the deceased and Koslowski; and this is the principal question to be determined in the case. That Frank Mercek had the legal right to dispose of his property as he saw fit cannot be disputed. If, because of dissatisfaction with his treatment in the home of his son, or because he could not, while living there, attend church to his satisfaction, he desired to change his residence, that was a privilege which no one could deny him. After living with Koslowski for some time, if he found a home there to his satisfaction, he had a right to enter into the contract which he did, and that contract is legal and binding. The rule is well established that one may, for a sufficient consideration, bind himself to make a particular disposition of his property, and such contract, upon performance by the other party, is irrevocable and enforceable upon the death of the promisor. *Kofky v. Rosicky,*

41 Neb. 328; *Teske v. Dittberner*, 65 Neb. 167. We understand that counsel for defendants in error do not controvert this proposition, but they insist that the administrator of Mercek's estate is entitled to the money and property of which he died seized, and that Koslowski should file his claim with the administrator and have it allowed by the probate court. That the administrator is generally entitled to the possession of all personal property of the intestate cannot be doubted; but whether in cases of this character he can, merely by virtue of his appointment and without showing that there are creditors of the estate having rights in the property, demand it from one in possession, claiming title under a contract with the decedent, such as above set out, is the question in dispute. In *Emery v. Darling*, 50 Ohio St. 160, 33 N. E. 715, the syllabus is as follows:

"One sister covenanted in writing with another that, if the latter would reside with her as long as she desired, she would 'give and bequeath' to her all the property, real and personal, of which she should died seized. The sister to whom the promise was made accepted it, and fully performed the contract on her part. * * * *Held*, That at the death of the sister making the promise the other became the equitable owner of the property of which her sister died seized; and, in specific performance of the contract, is entitled to a conveyance of the legal title from the heirs of her deceased sister."

We think that the rule above announced is correct and should be followed. If, as appears from the evidence in this case, Koslowski fully kept and performed his contract with the deceased, he has fully earned the property. It may be said that, because delivery was not made by the decedent in his lifetime, Koslowski was not invested with the legal title; but that he was the equitable owner seems beyond dispute. He had paid for it in the very terms required by his contract. He had fully performed upon his part. Nothing but a delivery was necessary to invest him with the legal title. It would be a useless and a senseless

proceeding to require him to pass this property over to the administrator with one hand, and award him the right, which the law will not deny, to take it back with the other. It may be, although that is a question which is not presented and which we do not determine, that creditors of the estate of Mercek, who extended credit, relying on this property for payment, if any exist, have a right to be paid out of this money, but there is no showing in this record that any such creditors exist. It is conclusively shown that the expense of the burial had been paid by Koslowski, and we cannot presume that there is other indebtedness to be provided for, and, as between the administrator and Koslowski, we are satisfied that the latter has the better right.

In *Howes v. Whipple,* 41 Ga. 322, A desired to purchase from B a lot of mules on credit, and B refused to sell, and thereupon A proposed to trade to B certain cotton then on A's plantation, which B declined, as he knew nothing of the cotton trade, but offered to let A have the mules if he would deliver the cotton at the warehouse of C, at Macon, to be sold for B's benefit, in payment for the mules, and both the parties went to the warehouseman and stated the contract, and he undertook, as agent of both parties, to receive and sell the cotton, and pay to B the price agreed on for the mules out of the proceeds, and the mules were thereupon delivered to A, who, on going home, commenced hauling cotton to the depot, instructing the agent to send it to C under the contract. After the cotton was delivered at the depot, but before shipment, A suddenly died. It was held that under these facts B had acquired such an intere  in the cotton to the extent of the price of the mules that it was not assets of A's estate for distribution, and a court of equity, in a bill filed for direction, would direct so much of the proceeds of the cotton as equaled the price of the mules to be paid to B, and this even as against persons who claimed that A was indebted to them as a trustee, and, consequently, upon a debt of the highest dignity under the statute of distributions. In the opinion it is said:

"Can anyone question that a court of equity would have restrained Mr. Brown from disposing of this cotton other-. wise than as he had agreeed? Had he attempted to divert it from Hardeman & Sparks, would not equity have compelled him to send it to them, as he had contracted to do? It does not follow that because a sale is not complete, so as to change the possession or give a clear title, the purchaser has no *interest* in the thing. In the case of real estate a court of equity will compel a specific performance to prevent fraud. In cases of personal property, the remedy by suit for damages stands in lieu of this, but the principle is the same, and if it would be a fraud upon the purchaser, and he have no other remedy, the mere fact that the property is personal property does not defeat the party of his remedy. Equity will decree the specific performance of contracts for leases, or the good-will of a trade, and, generally, if there be no adequate remedy at law, equity will grant relief to prevent fraud and injustice."

*Asbury v. Hicklin*, 181 Mo. 658, 81 S. W. 390, was a case where the deceased left only a personal estate, and, in an action for specific performance of the contract to devise a child's share to the plaintiff, the court held that a court of equity will specifically enforce an oral contract to devise property to another in consideration of services actually rendered, provided the proof of such contract is so cogent, clear and forcible as to leave no reasonable doubt as to its terms and character.

*McKinnon v. McKinnon*, 56 Fed. 409, was a case where an uncle and his nephew made a partnership agreement, by which it was agreed, "in the event of the death of the senior member of the firm, all his property, personal and otherwise, which he held in partnership at the time of his death, should go to the junior partner." Judge Thayer, in delivering the opinion, said:

"The partnership articles involved in the present controversy were neither intended as a deed nor a will. They constitute an executory agreement, which determines the rights of the parties *inter se*, and provides what disposition

shall be made of the partnership property on the happening of a certain event. In the state of Missouri, where these articles were signed, and where both parties at the time resided and carried on business, it is as well settled as it is in any state of this Union, that an agreement by a person, upon a valuable consideration, to give to another the whole or a part of his property at the promisor's death, will be specifically enforced in equity, both as to real and personal property, if the consideration is duly rendered by the promisee."

It will be seen, therefore, that courts of equity enforce contracts of the character of the one under consideration, whether the property involved is real estate or personalty, and, this being so, Koslowski has an interest in the property of which he took possession as owner thereof, subject, it may be, to some special debts of Mercek, which might be made a charge against this fund.

We recommend that the judgment of the district court be reversed and the cause remanded for further proceedings not inconsistent with this opinion.

ALBERT and JACKSON, CC., concur.

By the Court: For the reasons stated in the foregoing opinion, the judgment of the district court is reversed and the cause remanded for further proceedings not inconsistent with this opinion.

REVERSED.