772

ROSE NEWMAN, EMIL C. NEWMAN, LOUIS SANKER, AND JOSEPH L. MEYER, EXECUTORS, ESTATE OF SAMUEL NEWMAN, DECEASED, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 59598. Promulgated November 28, 1934.

*W. C. Magathan*, *Esq.*, and *S. L. McCormick*, *Esq.*, for the petitioners.

*P. M. Clark*, *Esq.*, and *S. B. Pierson*, *Esq.*, for the respondent.

# 778

ARUNDELL: Section 302 of the Revenue Act of 1926 provides that:

The value of a decedent's gross estate shall be determined by including the value at the time of his death of all property, real or personal, tangible or intangible, wherever situated—

(a) to the extent of the interest therein of the decedent at the time of his death;

*     *     *     *     *     *     *

(c) To the extent of any interest therein of which the decedent has at any time made a transfer, by trust or otherwise, in contemplation of or intended to take effect in possession or enjoyment at or after his death, except in case of a bona fide sale for an adequate and full consideration in money or money's worth. *    *    *

Petitioners contend that, since the statute includes in the gross estate only decedent's interest in the 666 shares of common stock, no value is includable because the contract of January 6, 1925, effected a bona fide sale of decedent's interest for an adequate and full consideration in money's worth.

Respondent contends that, since the stock stood in decedent's name on the corporation's books and was continuously in decedent's possession until he died, decedent was the owner thereof and the value of the shares should be included in decedent's gross estate. Respondent points to the provisions in decedent's will requiring the distribution of two thirds of the corporation's undivided profits and surplus account to his estate before transfer of the common stock, as corroborative of decedent's ownership of said 666 shares.

In the final analysis the real question here is the extent of decedent's interest under the contract. What were his rights and obligations thereunder? Did his interest amount to absolute ownership of the entire 666 shares of common stock, or was it something less than that? Decedent's executors fixed the amount of his interest as $33,300; the respondent fixed the amount of decedent's interest as $349,650, based upon a valuation of $525 per share for the common stock. In other words the executors claimed that decedent's interest in the 666 shares of common amounted to no more than the 333 shares of second preferred stock that he was entitled to receive under the contract. Respondent ignores any contract right in decedent to the 333 shares of second preferred, holding that his interest in the common is the full value thereof.

There can be no doubt from the record as to the intent of the partners. The preliminary discussions and the contract of January 6, 1925, establish the intention to be an ultimate exchange of second preferred for common, so that the sons would hold all the common and the father all the second preferred. Furthermore, the record is clear that the parties themselves understood that this was the

agreement as manifested by the transfers of December 7, 1928, which accomplished the results previously agreed upon.

Obviously, under the contract, decedent held legal title to the common stock. He had continuous possession of the 666 shares and exercised the privileges with respect thereto. However, it cannot be denied that the sons acquired an equitable title to the stock in consideration for their consent to the stock distribution agreed upon, and waiver of any claim against decedent's estate as to the second preferred stock. At the time the sons agreed to the terms imposed by their father, they collectively owned approximately 55 percent of the partnership capital. By the terms of the contract which they accepted, their collective interest was reduced to 28 percent of the entire capital stock of the corporation until retirement of their father from the business, or until his death. This detriment to the sons was certainly sufficient consideration to support the proposition that the sons purchased the common stock, delivery to be made in futuro.

If decedent had failed to provide in his will for the transfer, the sons could have compelled the transfer by an action for specific performance. The proposition is laid down in In re Strang's Estate, 131 Iowa, 583; 106 N. W. 631, that agreements to devise when founded upon a consideration will be enforced and the heir to whom legal title descends holds it in trust for him to whom it should have been devised. See also Cheehalis v. Battles, 135 Iowa, 107; 110 N. W. 330; Koslowski v. Newman, 105 N. W. 295; Svumberg v. Fosseen, 78 N. W. 4.

In Howes v. Whipple, 41 Ga. 322, A contracted to trade cotton for B's mules, the cotton to be delivered by A to C's warehouse, C to sell the cotton and forward the proceeds to B in the amount of the price agreed upon for the mules. B delivered the mules to A, who commenced hauling the cotton to the depot for shipment to C. After delivery of the cotton to the depot but before shipment, A suddenly died. It was held by the court that B had acquired an interest in the cotton to the extent of the price of the mules, that this amount was not assets of A's estate for distribution, and that a court of equity would direct so much of the proceeds of the cotton as equaled the price of the mules to be paid to B.

In McKinnon v. McKinnon, 56 Fed. 409, an uncle and his nephew entered into a partnership agreement for the practice of medicine, which provided, inter alia, that upon the senior partner's (uncle) death all his property went to the junior partner. The court held that the agreement was neither a deed nor a will, but an executory agreement " which determines the rights of parties inter se " and provides for disposition of partnership property upon the happening

of a certain event. The court stated further that it is well settled that an agreement upon a valuable consideration to give to another the whole or part of his property at the promissor's death will be specifically enforced in equity both as to real and personal property, if the consideration is duly rendered by the promisee.

One of the leading cases upon the foregoing propositions of law is *Emery* v. *Darling*, 50 Ohio St. 160; 33 N. E. 715. In this case one sister covenanted in writing with another that if the latter would reside with her as long as she desired that she would give and bequeath to her all the property, real and personal, of which she should die seised. Mary Darling accepted her sister's offer and lived with her until the latter's death, who died without making a will or conveying the property in any way. The Supreme Court of Ohio held that at the death of her sister, Mary Darling was the equitable owner of the property of which her sister died seised, and in specific performance of the contract was entitled to a conveyance of the legal title from the heirs of her deceased sister.

These decisions, in our opinion, point to the solution of the present issue. The decedent under the contract was the equitable owner of the 333 shares of second preferred held by his sons, and the latter were the beneficial owners by the same contract of the common stock held by their father. Actually the contract separated the legal and equitable titles to a portion of the second preferred, and to a portion of the common stocks between the father and sons, with reciprocal obligations on each to exchange said stocks upon the happening of an event certain to occur but uncertain as to time of occurrence.

By the terms of the contract the decedent obtained an indefeasible interest in the 333 shares of second preferred held by his sons, and the latter obtained a similar interest in the 666 shares of common held by their father. Decedent's will clearly recognized the interests created by the contract of January 6, 1925, and provided for the carrying out of its terms.

The net result of the contract between decedent and his sons was that upon death there was available for distribution as a part of decedent's estate the second preferred stock, some of which then stood in the decedent's name and the balance of which the sons were bound to and did transfer to the decedent's estate. It may plausibly be argued that the father had some interest in the common stock by reason of its standing in his name at the time of death. However, it is immaterial whether we say that his interest in the corporation is measurable in part by some interest in the common stock plus some interest in the preferred stock held by the sons, or entirely by the second preferred stock. The result is the same either way. If he had an interest in the common stock it would be offset by an en-

forceable claim of the sons for the stock, which would leave no value for that stock for estate tax purposes, and if he had some interest in the second preferred while it stood in the names of the sons, that became merged in the whole value when upon death the sons became obligated to transfer it to the estate. So, any way that the matter is approached the extent of the decedent's interest in the stock of the corporation was no more than the value of the 1,000 shares of second preferred stock, to which both the parties have assigned a value of $100 per share.

Whether or not decedent as a matter of right was entitled to an interest amounting to $52,960.86 in the corporate surplus and profits, the acquiescence of the sons in the distribution of that amount to the estate made it a part of the estate and it should be included for the purpose of the Federal estate tax.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

MURDOCK and McMAHON concur in the result.