WILSON v. EDWARDS.

Opinion delivered May 14, 1906.

1. EVIDENCE—STATEMENT OF INTESTATE.—In an action against an administrator to recover certain chattels, testimony of the plaintiff that the intestate handed the chattels to her in his last illness, saying, "These are yours," is within the constitutional inhibition against testifying as to "transactions with or statements of" the intestate in an action against his administrator under Const. 1874, sched., § 2. (Page 73.)

2. GIFT—DEPOSIT OF MONEY.—Where intestate deposited funds in a bank to the credit of plaintiff, and gave the bank written authority to pay it out on plaintiff's or his signature, and thereafter drew out a portion of the funds by checks signed by him as plaintiff's agent, the remainder of the deposit at his death belonged to plaintiff. (Page 74.)

3. TRUST—PURCHASE WITH ANOTHER'S MONEY.—One who purchases land or chattels with another's money and takes title in his own name becomes trustee for the other. (Page 75.)

4. APPEAL—REVERSAL OF JUDGMENT IN EQUITY—REMANDING.—Where a chancery decree involving the title to land is reversed, the practice is to remand with directions to the chancery court to enter a decree in conformity to the opinion of this court. (Page 75.)

Appeal from Pulaski Chancery Court; *Jesse C. Hart,* Chancellor; reversed.

*Whipple & Whipple,* for appellants.

1. The deposit in bank was a completed gift, *inter vivos,* of the entire deposit. Having been deposited in the sole name of Mrs. Wilson, she being always thereafter, in the mode of drawing

checks, recognized as being the sole depositor, Payne acting as her agent, the money was absolutely hers. 1 Parsons, Cont. ch. 15, § 1; 1 Ark. 83; 14 Ark. 505; 43 Ark. 307; 68 Ark. 255; 66 Ark. 299; 63 Me. 364; 124 Mass. 472; 36 Conn. 88; 11 R. I. 266; 8 R. I. 536; 1 Daniel, Neg. Inst. (2 Ed.), § 24; 40 Conn. 512; 16 Abbott, Pr. 380; 88 Me. 122; 113 N. Y. 560; 40 Vt. 597; 52 N. H. 238; 11 L. R. A. 686; 3 Ib. 230; 40 Fed. 15; 67 N. E. 232; 96 Me. 62; 62 N. E. 1028; 32 Md. 78; 40 Conn. 512.

2. The balance left in bank at the death of Payne was a gift to Mrs. Wilson. 107 U. S. 602; 113 N. Y. 560; 18 L. R. A. 170; 26 R. I. 228; 66 Kan. 466; 88 Me. 511; 51 N. Y. 202; 51 Atl. 71; 50 Atl. 600; 69 N. Y. S. 9; 125 N. Y. 572; 125 Mass. 590; 40 N. Y. S. 340.

3. The lot in Argenta, purchased with the funds on deposit in bank, and the buggies, purchased with funds drawn from the same deposit, became the property of Mrs. Wilson under the law of resulting trust, and also, as to one of the buggies, because it was an absolute gift. 51 Ark. 351, and authorities cited; 47 Ark. 533; 42 Ark. 511; 8 L. R. A. 788; 18 L. R. A. 204; 121 Fed. 620; 59 Ark. 191; 38 Ark. 413.

4. The testimony as to what took place up to the delivery of the notes to Payne on his death bed, and as to what was done by Mrs. Wilson in the sick chamber in receiving them, taking and maintaining absolute control of them thereafter, sufficiently establishes the gift and delivery. 30 Ark. 296; 86 Minn. 497; 10 Bush, 362; 60 Ark. 169; 14 Pickering, 198; 1 P. Wms. 404; 15 Me. 429; 44 S. E. 721; 38 Md. 451; 72 N. Y. S. 1030; 11 Ark. 249; 59 Ark. 93; Ib. 191; 38 Ark. 413. Promissory notes, whether indorsed or unindorsed, may be the subject of gift both *causa mortis* and *inter vivos.* 55 Atl. 139; 107 U. S. 602; 71 N. H. 585; 7 L. R. A. 387; 58 Ohio St. 218; 7 Gray, 383; 2 Redfield on Wills, 312, 313; Tiedeman, Com. Paper, 20, 21; Byles on Bills (Sharswood's Ed.), 295, 296; 13 Gray, 418; 14 Pick. 203; 24 Pick. 264; 1 Met. 420; 16 Ala. 221; 18 Conn. 410; 11 Vt. 290; 27 Me. 198; 8 R. I. 536; 124 Mass. 472; 18 L. R. A. 170; 73 Cal. 614. For distinction between gifts *inter vivos* and *causa mortis,* see 60 Ark. 169; 68 Ark. 255.

5. The rule of exclusion laid down in the schedule to the

Constitution operates to shut out no testimony absolutely vital to the case. Although it does exclude the testimony of Mrs. Wilson that Payne, after receiving the notes from Holt, handed them to her, saying, "These are yours," still the legitimate inference from the testimony is that he must have delivered them to her and intended that they should be hers. The proviso in sec. 2, sched., Const., is to be construed strictly and is not designed to exclude absolutely the testimony of the party. 63 Ark. 539; 102 U. S. 163; 26 Ark. 476; Wharton on Ev. § 464; *Ib.* § 467, 468, 269, 473. See also 61 Ark. 329; 139 U. S. 478; 43 Ark. 316; 42 Fed. 448; 89 N. Y. S. 965; 31 So. 77; *Ib.* 454; 59 S. W. 725; 124 Cal. 363; 20 Ind. App. 447; 107 Iowa, 451; 92 Wis. 532; 59 Hun, 628; 58 Hun, 251; 7 Mackey, 311; 30 S. C. 284; 23 N. Y. 496; 30 Hun, 555; 64 N. C. 640; *Ib.* 642; 43 Ark. 307; 46 Ark. 310; 63 Ark. 561.

*Geo. W. Williams,* for appellees.

1. There was no evidence of delivery of the notes except Mrs. Wilson's, and that was incompetent. Sec. 2, sched., Const.; Kirby's Digest, § 3093.

2. There was no completed delivery. All the evidence as to Payne's intention to give his property to Mrs. Wilson shows that it was to take place at or after his death. This is not a completed gift. 13 S. W. 1101; 43 Ark. 307; 44 Ark. 42; 72 Ark. 307; 15 Ark. 519; 1 Ark. 83. Actual delivery can not be dispensed with or making a will avoided on the ground that it had been placed in other hands in trust. 136 Ill. 388; 144 Ill. 611; 75 N. Y. 134. Where a gift *inter vivos* was not asserted until after death, to sustain it the evidence must be as clear and convincing as the evidence required to sustain a gift *causa mortis.* 17 N. Y. App. 836. See also 153 Pa. St. 14; 10 Am. L. Rep. 403; 8 Ohio St. 239; 43 Ohio St. 462; 35 Ark. 18, 22; 18 Pa. St. 328; 107 U. S. 602; 72 Ark. 307; 114 Mass. 30.

3. Deposits in a bank doing a general banking business can not be transferred by delivery of the pass book. Such delivery gives no dominion and control of the money. 19 L. R. A. 700; 105 Cal. 143; 22 Cent. L. J. 228; 30 Hun, 632. Even in a savings bank the transfer must be complete, without retaining any control by the donor. 185 Pa. St. 41; 48 Mo. 550; 49 Am. Rep. 326; 71

Md. 248; 52 Am. Rep. 602; 142 Mass. 1; 138 Mass. 581; 156 Mass. 309.

Hill, C. J.  W. L. Payne lived in Argenta, and was in charge of the postoffice there as a sub-station of the Little Rock office.  His family consisted of his wife and her daughter, Mrs. James T. Wilson.  Payne had been married to the mother of Mrs. Wilson about 25 years, and she had lived in the family much of her life, and the evidence establishes his affection for her was that of a father for a daughter.  He had two sisters living in Massachusetts.  He had not seen them for many years, but retained affectionate relations with them, and at one time evidently intended to make a testamentary provision for an invalid niece.

Mrs. Payne, assisted by her daughter, Mrs. Wilson, kept boarders for many years, and made some money therefrom, and Payne was evidently industrious and the earner of a good income.  Each of them carried bank accounts.  Mrs. Payne was stricken with paralysis, and lingered in a helpless condition for several months before her death.  Her mind retained its force, but her power of speech was largely lost.  She kept up, in a measure, with affairs, knew when her rents fell due, and in other ways evidenced the retention of mental forces, despite the loss of power to convey her thoughts distinctly.  While in this condition, she made certain signs and gave directions which Payne construed as desiring that her money on deposit be given to her daughter.  Payne went to the bank, and told the cashier that he had some funds which belonged to his wife, and he wanted them placed in such a way that in case of his death that they should be the property of Mrs. Wilson.  The cashier told him to open an account in the name of Mrs. Wilson.  This he did, and placed to her credit the amount then in his wife's name and also what was in his name, the amounts being $130 of his and $140.06 of Mrs. Payne's.  This account grew until the total deposits were $1,902.06, and at Payne's death there was a balance of $400.06.

At the time of the opening of the account in Mrs. Wilson's name, Mr. Payne carried to her one of the cards of the bank prepared for signature of those authorized to draw on the deposit. Mrs. Wilson signed it, Payne signed it, and Mrs. Wilson signed it again under Payne's signature, and this card was returned to the bank.  Payne drew all the money drawn, over $1,400, and all

in checks signed "Mrs. James T. Wilson, per W. L. Payne, agent."

Payne owned several promissory notes, and he had some packages of valuable papers, presumably containing these notes, in a drawer in his postoffice safe. After the death of his wife, he gave a direction, testamentary in character, to his friend, the Little Rock postmaster, to give the valuable papers in this safe to Mrs. Wilson after his death. Payne fell ill, and after a short illness died. His death was unexpected to him and his friends, and there is nothing in the transaction about to be related, even if the evidence was admissible, which would constitute a gift *causa mortis* by him to Mrs. Wilson. See *Ragan* v. *Hill,* 72 Ark. 307. While he was ill, he sent for his friend, Postmaster Holt, and had him to bring him a package of papers from his private box in the postoffice safe. These were delivered to him a few days before his death. After his death the postmaster delivered the other papers to Mrs. Wilson. It is not claimed that the notes or bank book or other evidence of debt or property were in the package delivered after Payne's death. There was much evidence to the effect that Mr. Payne intended giving his property to Mrs. Wilson at his death.

Mrs. Wilson testified that she did not give Payne authority to withdraw the money in bank, nor did she know that he had done so. In fact, she knew little of the affair of the money in the bank in her name. After the death of Payne Mrs. Wilson claimed the money in bank, various notes as having been given to her by Payne and also the title to a lot purchased out of the money in bank and two buggies purchased from the same source. The administrator of Payne and his sisters resisted these claims, and this suit is to determine them.

1. Mrs. Wilson testified that after Mr. Holt had brought Mr. Payne the package, during his last illness, Mr. Payne handed it to her and, said, "These are yours," and told her that he had used some money belonging to her, and to put these notes in bank for collection. This package contained several notes of John and C. Lemmer, one note of Mrs. Lou C. Payne, and one note of W. S. Holt, aggregating about $1,800, and the bank book containing the deposits in her name. A gift *inter vivos* of personal property must be perfected by delivery. *Ragan* v. *Hill,* 72

Ark. 307. The competent evidence here completely fails to establish delivery. The evidence of Mr. Holt merely places a given package into the hands of Mr. Payne. So much of Mrs. Wilson's testimony as is admissible is the evidence that this package contained the notes in question and her possession of it. This is the utmost that her testimony can reach to. All that she said about Payne delivering the package to her, stating it was hers, etc., was clearly within the inhibition of the constitutional provision against testifying as to "transactions with or statements of" intestate, in an action against his administrator. See section 3093, Kirby's Digest. The construction placed on this clause by this court in *Nunnally* v. *Becker,* 52 'Ark. 550, eliminates the testimony relied upon to establish the gift and the delivery; and the mere possession of the notes by Mrs. Wilson could not raise any presumption of gift.

The chancellor decided these notes to have been Mrs. Wilson's by virtue of a gift, but in this he erred, and the judgment should have been that these notes belonged to the administrator.

2. The fund in bank presents an entirely different question. It is insisted that Payne's stated intention that this fund should go to Mrs. Wilson when he died and his continued use of it demonstrated that he had not delivered it to her, and he had not parted with dominion over it; that he still exercised control, and the deposit in her name was a mere method to convey the balance to her at his death. Various statements of Payne's gives color to this view, but, taking the actual transaction itself, it stamps itself as a complete delivery of the money to Mrs. Wilson. He put into her name a fund held, up to that time, separately by himself, and his wife. He increases it from time to time by deposits amounting in round numbers to $1,500. He arranges that either Mrs. Wilson or himself might draw every dollar, but he does not draw any on his own account, but all as agent of Mrs. Wilson. He invests Mrs. Wilson with title to the deposit, and gives the bank the written authority to pay it out on Mrs. Wilson's or his signature. Thereby he gave her complete and absolute dominion of every dollar, should she choose to exercise it. The fact that she gave him authority to draw in the same written order can not affect the result; for, if hers by this gift, she could do as she pleased with it. The fact that he did draw as her agent, and not in his own

right, emphasized the fact when he drew each check that the fund was hers, not his. The chancellor divided the balance of the fund by giving to Mrs. Wilson the amount of the original deposit of Mrs. Payne, and to the administrator the amount of Payne's original deposit. This was error. All of the balance should have gone to Mrs. Wilson.

3. The evidence shows that with one check drawn as the others above stated, Payne purchased lot 5, block 18, Argenta. This being purchased with money of another and title taken in his own name created Payne trustee for the person whose money paid for the property. *Gainus* v. *Cannon,* 42 Ark. 511; *Atkinson* v. *Ward,* 47 Ark. 533; *Humphreys* v. *Butler,* 51 Ark. 351; *Leslie* v. *Bell,* 73 Ark. 339. The chancellor quieted the title to this lot in the heirs and administrator, and Mrs. Wilson cross-appealed from that order, and her cross-appeal is sustained.

4. The remaining items were two buggies. One bought and delivered as a gift by Payne to Mrs. Wilson was decreed to her, and this is not contested here. The other was bought from the fund in bank with a check signed by Payne as agent. The buggy was bought for Payne's own use; and if there was any evidence that Mrs. Wilson knew it was bought out of this fund, a gift would be presumed in his favor by reason of the character and use of the property. But she swears that she did not know it was purchased with her funds, and consequently no presumption can be raised, and, however *contra bonos mores* the act may be, the same rule applies to this purchase as to the lot, and the title must be held in trust for the one paying for it. As to this buggy, the chancellor's decree is also reversed. As title to real estate is involved, pursuant to practice in such cases, the cause is remanded with directions to the chancery court to enter a decree in conformity herewith.