## HOLMAN v. DESERET SAVINGS BANK et al.

No. 2306.   Decided May 10, 1912.   Rehearing denied June 25, 1912
(124 Pac. 765).

1. GIFTS—GIFT OF DEPOSIT—DEPOSIT IN NAMES OF DONOR AND DONEE.
A savings bank depositor, having a deposit in the name of her-
self and D., upon the death of D. changed the deposit so that
it was in the names of herself and plaintiff.   The cashier ex-
plained to both parties that either could draw out the money.
The depositor did not state that she intended it as a gift,
but on the following day made her will, in which she referred
to other deposits, but not to the one in question, and shortly
thereafter left home on an extended visit.   The passbook was
delivered to plaintiff.   Held, that the evidence did not show
a gift of the deposit to plaintiff; it not being plain that the
deposit was not made in that form as a matter of business con-
venience.   (Page 341.)

2. GIFTS—GIFT OF DEPOSIT—DEPOSIT IN NAMES OF DONOR AND
DONEE.   For the same reason, the deposit in such form was not
sufficient to show that the depositor intended to make plaintiff
a joint owner thereof, entitling her to the whole on the death
of the depositor.   (Page 341.)

3. GIFTS—"GIFT INTER VIVOS"—REQUISITES.   Gifts inter vivos have
no reference to the future, and go into immediate and absolute
effect.   To constitute such a gift, the donor must be divested
of and the donee invested with the right of property in the
subject of the gift.   It must be absolute, irrevocable, without
any reference to its taking place at some future period.   The
donor must deliver the property and part with all present and
future dominion over it.   (Page 344.)

4. GIFTS—EVIDENCE—SUFFICIENCY.   When the intent of a person to
make a gift was not expressed, but must be implied, the
facts from which it is to be inferred should be clear and
unequivocal, especially where the gift is claimed by a stranger
after the alleged donor's death.   (Page 348.)

APPEAL from District Court, Third District; *Hon. Geo.
G. Armstrong,* Judge.

Action by Helen M. Holman against the Deseret Savings
Bank and another, and John N. Eslinger and another, inter-
venors.

Judgment for defendants.    Plaintiff appeals.

AFFIRMED.

*Allen T. Sanford* for appellant.

*J. E. Darmer, H. J. Dininny* and *S. P. Armstrong* for respondents.

FRICK, C. J.

The appellant brought this action to recover a deposit in the Deseret Savings Bank, one of the respondents, amounting to $498.71, which, it was alleged, was a gift to her from one Carrie L. Eslinger, deceased.

The controlling facts established by the evidence are, in substance, as follows:

The appellant and said Carrie L. Eslinger, deceased, the latter being a married woman, on the 21st day of June, 1907, and for about twenty-four years prior thereto, were friends and residents of Salt Lake City.   On said date the appellant and Mrs. Eslinger went to the Deseret Savings Bank aforesaid in which Mrs. Eslinger had a certain sum     **1, 2** of money on deposit.   Said savings Bank is not engaged in commercial banking, and the deposit was entered in a passbook issued by the bank for that purpose, and the account was entered in such book as follows:   "The Deseret Savings Bank in account with Carrie L. Eslinger, Eva Z. Dean."   Mrs. Eslinger presented the passbook to the cashier, and requested that the account as it then stood be changed. The cashier received the book and accordingly changed the account by transferring the same from the old book to a new one in which the account was entered in the following form: "The Deseret Savings Bank in account with Carrie L. Eslinger or Helen M. Holman."   When Mrs. Eslinger presented the passbook and requested that the account be changed as aforesaid, what occurred at that time is testified to by the cashier in the following words:

"Mrs. Eslinger came in with the book of the same number with this which was then in the name of Carrie L. Eslinger and Mrs. Dean, and requested that the old book be changed so that it was to be made payable either to Carrie L. Eslinger or Mrs. Helen M. Holman, stating at the time that she wished it so fixed that, in case of her death, Mrs. Helen M. Holman could draw the money, and she wished her to have it."

The cashier also testified that he told the woman at the time the deposit was changed as aforesaid that in the form it was made by presenting the passbook either one could withdraw the money either before or after the death of either of them. He also stated that such was the effect of the deposit while it was in the names of Mrs. Eslinger and Mrs. Dean, but, as the cashier remembered the fact, nothing was said by Mrs. Eslinger when the deposit was made in Mrs. Dean's name that she intended Mrs. Dean to have the money. From what is said by the cashier it seems that, so far as the bank was concerned, the only change that was effected by changing the account as aforesaid was to substitute the name of Helen M. Holman for that of Eva Z. Dean. The record discloses no other express statement or declaration by Mrs. Eslinger from which one could deduce the fact that she intended the transaction as a gift *inter vivos*. There are some circumstances, however, from which this inference might be drawn. For example, on the day following the foregoing transaction, Mrs. Eslinger made her will in which she made no less than twenty-eight specific bequests to fourteen different persons of whom Helen M. Holman is one. In said will she refers to some money on deposit in another bank, but says nothing about the money in question. Again, according to the testimony, the passbook was given to or left with Mrs. Holman, and she had it when Mrs. Eslinger died, in November, 1907. Upon the other hand, it is also true that at the time the account was changed Mrs. Eslinger intended to go, and on the second day thereafter did go, to Pueblo, Colo., for an extended visit with some relatives. At that time she was in ill health, and suffering with some disease of the kidneys from which she died in the November following. She may then

have been induced to change the account for the purpose of making it possible for her friend Mrs. Holman to draw the money as her agent or trustee in view of the fact that Mrs. Dean had died, as appears from the evidence; that is, she may have made the deposit in the form it was made as a matter of business convenience, and not with the intention of making a gift. If the latter view be indulged, then the placing of the passbook into the possession of Mrs. Holman may be explained upon other grounds than that a gift of the fund was intended by giving her the passbook. There are also some other facts and circumstances in evidence, and, when all are considered, there is nothing from which a clear intention to make a gift of the deposit on the part of Mrs. Eslinger can be deduced.

After making findings in accordance with the foregoing facts, the court, upon the question of whether Mrs. Eslinger intended to make a gift, found as follows:

"That at the time of said Carrie L. Eslinger said savings deposit book was in the possession of said plaintiff Helen M. Holman, and had been so in the possession of said Helen M. Holman before the death of said Carrie L. Eslinger, but such possession was not delivered by said Carrie L. Eslinger with the intent to part with her rights or interest therein, or to relinquish her control over said deposit, and the said Carrie L. Eslinger up to the time of her death still retained control over said deposit and said deposit book, and did not give or deliver to plaintiff said deposit book or said deposit absolutely or unconditionally, or in order to make the plaintiff a gift of said amount so deposited, and neither said book nor said deposit is the property of or belongs to plaintiff."

Appellant's counsel insists that the findings, conclusions of law, and judgment are erroneous, and he states the grounds of his contentions as follows:

"Because, first, the plaintiff and Carrie L. Eslinger were joint tenants or joint owners and under the rule of law governing joint tenants it belongs to the survivor; or, second, the gift was complete and title was vested in the plain-

tiff. All the requirements of a gift *inter vivos* were complied with."

Quite a number of definitions of what constitutes a gift *inter vivos* are given in 4 Words & Phrases, pp. 3091, 3092, in which is one taken from the case of *Liebe v.*  **3** *Battman* (Or.), 54. Pac. 662, which in our judgment is as complete a definition as is usually found in the books. The definition there given is as follows:

"Gifts *inter vivos* have no reference to the future, and go into immediate and absolute effect. To constitute such a gift, the donor must be divested of, and the donee invested with, the right of property in the subject of the gift. It must be absolute, irrevocable, without any reference to its taking place at some future period. The donor must deliver the property, and part with all present and future dominion over it."

Assuming competent parties, we think the foregoing is a correct statement of the elements that are necessary to constitute a valid gift *inter vivos*. Surely no one will seriously contend that the arrangement between Mrs. Eslinger and Mrs. Holman testified to by the cashier constituted an executed gift *inter vivos*. Nor can it be assumed from anything that was said or done by Mrs. Eslinger that she manifestly intended to divest herself of the title to the money on deposit, and to vest the title thereof in Mrs. Holman. All that can be affirmed with any degree of certainty in that regard is that it is possible that Mrs. Eslinger either intended to make a gift of the whole of the deposit to Mrs. Holman, or that she intended to create a joint tenancy, whereby she and Mrs. Holman should be joint owners of the money on deposit with the right of either to draw upon it during life and the survivor to take any remainder that might be left in the bank on the death of the other joint owner. The mere fact that it was understood as the cashier testified that either Mrs. Eslinger or Mrs. Holman had the authority to withdraw the whole or any part of the deposit entirely destroys the theory of a completed gift of the whole fund. True, Mrs. Holman had the passbook, but it must be assumed that she had it only for the purpose of making effective the arrangement

that either one could draw upon the deposit by presenting the passbook at the bank. Under the arrangement testified to by the cashier, either one was entitled to obtain the passbook from the other on demand. While this may not have been expressed, it is clearly implied from the fact that it was intended that either could draw upon the fund in the bank by presenting the passbook. It should also be kept in mind that no reason is disclosed by the evidence why the deposit could not have been claimed as a gift by Mrs. Dean or her heirs upon the same grounds that it is now claimed to be one by Mrs. Holman. Again, it is quite clear from Mrs. Eslinger's conduct that she did not consider the deposit when placed in the name of Mrs. Dean a gift to her, yet it was the same in form as it was when Mrs. Holman was substituted for Mrs. Dean. We are clear that the transaction did not constitute a gift *inter vivos* of the whole fund.

Counsel, however, vigorously contends that the transaction between Mrs. Eslinger and Mrs. Holman constituted a gift by the former to the latter of an undivided moiety in the fund, and they thus became joint tenants thereof with all the rights and incidents pertaining to that relation, including the right of the survivor to take the whole or such part of the fund as should remain in the bank at the death of the other. In this connection counsel contends that, where a fund is owned jointly by two which is placed on deposit in their names as joint tenants, it follows as a matter of course that either has the right to draw upon it if it is deposited for that purpose, and that in order to do so either is entitled to the passbook, and hence the possession of such book is not necessarily controlling, nor does the fact that the owner has the book necessarily destroy the inference that a gift was intended by making deposit as aforesaid. In support of the foregoing contention, counsel has referred us to quite a number of cases. In many of them it is held that where money is placed on deposit in a savings bank by the owner thereof in the joint names of himself and another, and he delivers the passbook to such other, such a transaction in connection with other facts and circumstances showing the intention of the

owner of the money to make a gift may constitute a gift *inter vivos,* and it may also make the parties in whose names the deposit is made joint tenants, including the right of the survivor to take the whole. Among the cases illustrating the foregoing doctrine we refer to the following: *McElroy v. National Svgs. Bank,* 8 App. Div. 192, 40 N. Y. Supp. 340; *Whitehead v. Smith,* 19 R. I. 135, 32 Atl. 168; *Dennin v. Hilton* (N. J. Ch.), 50 Atl. 600; *Kelly v. Home Svgs. Bank,* 103 App. Div. 141, 92 N. Y. Supp. 578; *Industrial Trust Co. v. Scanlon,* 26 R. I. 228, 58 Atl. 786, 3 Ann. Cas. 863; *State Bank v. Johnson,* 151 Mich. 538, 115 N. W. 464; *Garrick v. Taylor* (4 De Gex.), 65 Eng. Ch. R. 159. In the case of *Dennin v. Hilton, supra,* Vice Chancellor Pitney goes thoroughly into the subject of joint deposits. He concedes that in all cases of joint deposits the controlling question always hinges upon whether the owner of the money intended to make a gift, or whether the account was entered in joint form for other purposes. The Vice Chancellor also makes clear that, unless the intention to make a gift is expressed in writing or is clearly inferable from the acts or declarations of the alleged donor, there may always be grave doubt whether such a transaction shall be considered a gift or a deposit for convenience. The form of the two deposits involved in *Dennin v. Hilton* were as follows: One was on the condition that the "account belongs to us as joint tenants . . . absolute property in survivor, either and the survivor to draw," and the other was on the condition that the "money to be paid to either party; in case of death of either one the survivor to draw the balance." The expressions that either may draw and that the survivor shall take the remainder, or that the depositors are joint owners or joint tenants, are typical and are found in some form in nearly all the cases where money was deposited in the names of two persons. In addition to the forms of deposit there are usually also facts and circumstances shown from which the courts deduced the intention of the alleged donor to make a gift or that he did not so intend. It may be said that each case depends to a very large extent on its own facts and circumstances. In

all of the cases cited above the essential element, namely, the joint ownership or that a gift was actually intended and executed for the purpose of creating a joint ownership, is either clearly established by the evidence or found as a fact by the trial courts. In the case at bar counsel, however, assumed that the fact of joint ownership is established from the mere fact that the money in question was deposited in the names of both Mrs. Eslinger, the owner thereof, and Mrs. Holman, so that either could withdraw it either during the lifetime of both or upon the death of one by presenting the passbook. While the foregoing fact may be considered as affording some evidence of a gift and joint ownership, yet standing alone, and especially when such ownership is denied, it is insufficient to establish either a gift or joint ownership. Naturally enough the cases are not in harmony as to what fact or circumstances are sufficient to establish joint ownership of a fund, especially where a deposit is made, as here, by the owner of a fund in the names of such owner and another. We have found no case, however, where the facts to establish a gift or joint ownership were as meager as they are in the case at bar where either a gift or joint ownership was held to have been established. There are a number of cases, however, in which the facts and circumstances were much stronger in favor of a gift and joint ownership than they are in this case, and yet the courts have held as a matter of law that neither was established. Among other numerous cases we refer to the following: *Robinson v. Mutual Svgs. Bank,* 7 Cal. App. 642, 95 Pac. 533; *Harris Banking Co. v. Miller,* 190 Mo. 640, 89 S. W. 629, 1 L. R. A. (N. S.) 790; *Denigan v. Hibernia Soc.,* 127 Cal. 137, 59 Pac. 389; *Schneider v. Schneider,* 122 App. Div. 774, 107 N. Y. Supp. 792; *Basket v. Hassell,* 107 U. S. 602, 2 Sup. Ct. 415, 27 L. Ed. 500; *Dodge v. Lunt,* 181 Mass. 320, 63 N. E. 891; *Murray v. Cannon Adm'x,* 41 Md. 466; *Savings Bank v. Merriam,* 88 Me. 146, 33 Atl. 840; *Whalen v. Milholland,* 89 Md. 199, 43 Atl. 45, 44 L. R. A. 208; *In re Hall's Estate,* 154 Cal. 527, 98 Pac. 269.

Mrs. Holman's possession of the passbook was just as consistent with the theory that the deposit was made in the names of both for the convenience of Mrs. Eslinger in view of her condition as that it was thereby intended to make a gift to Mrs. Holman. The evidence showed that the deposit had been in the names of Mrs. Eslinger and Eva Z. Dean for more than a year before the name of Mrs. Holman was substituted, and in view of Mrs. Eslinger's ill health and her absence, and the death of Mrs. Dean as disclosed by the evidence, it is only reasonable to suppose that, when the deposit was changed, it was done because Mrs. Eslinger was about to leave the state for an indefinite time, and hence for her convenience she wanted some one who was authorized to draw upon the fund in case it was needed. Mrs. Eslinger was not present to inform the court of her plans and intentions. All the court had before it were the facts and circumstances we have detailed. Mrs. Eslinger's intention had to be deduced from those facts and circumstances. No doubt every person has a legal as well as a moral right to dispose of his property in accordance with his own notions, and, so long as he complies with the forms of law, it is the duty of courts to effectuate his intentions when once ascertained.

When such intentions are expressed, ordinarily not much difficulty is encountered in determining what they are, but when, as here, they must be implied the facts from which the intention to make a gift is to be inferred, should be clear and unequivocal, and especially so when the gift is claimed by a stranger after the alleged donor's death. While it is the duty of courts to enforce the intention of the owner, it is also their duty to protect his estate against all claims unless established in conformity to law. We **4** are clearly of the opinion that the appellant has failed to establish a gift *inter vivos* of the whole deposit, and that she has also failed to prove that Mrs. Eslinger by making the deposit in the manner it was made thereby intended to have Mrs. Holman share therein as a joint tenant or otherwise. Entirely apart, however, from what has been said

so far this case also comes within the rule laid down in the case of *In re Hall's Estate, supra,* where the Supreme Court of California, in passing upon a similar question, makes the following observation:

"The intent of the alleged donor being a question of fact, the determination of the lower court must stand on appeal, if based upon any substantial evidence warranting the inference that an immediate divesting of ownership and dominion over the property was not intended."

The trial court found that such was not the intention of Mrs. Eslinger, and we do not hesitate to say that there is substantial evidence in the record to support the finding. Indeed, we seriously doubt whether the evidence would sustain any other conclusion.

The assignments that the trial court erred either in excluding or in admitting evidence are not tenable. We have carefully examined the bill of exceptions, and we are unable to discover any material evidence that was excluded by the court. Upon the other hand, it may be that the court admitted some testimony which was not relevant, but no serious error was committed in that regard. In fact, the court only admitted such evidence provisionally, leaving the determination of its relevancy and materiality after all the evidence was before the court. The case having been tried and submitted to the court, we must assume that it considered only the relevant and material evidence in the case. There being sufficient relevant and material evidence to justify the finding, we cannot interfere, although it might be that, if we had tried the case, we might have ruled differently than did the trial court on a few of the objections interposed by appellant.

The judgment is affirmed, with costs to respondent.

McCARTY and STRAUP, JJ., concur.