## OLSON v. SCOTT et al.

No. 3810.   Decided November 24, 1922.   (210 Pac. 987.)

1. GIFTS—GIFT OF BANK DEPOSIT HELD PROVABLE UNDER GENERAL DENIAL. In an administrator's action to recover a bank deposit in the name of decedent and defendant, or the survivor of either of them, it was not necessary for defendant to plead her source of title, but she might prove a gift under a general denial of plaintiff's title.

2. APPEAL AND ERROR—ADMISSION OF EVIDENCE AS TO MATTERS EQUALLY WITHIN KNOWLEDGE OF DECEASED PERSON IMMATERIAL IN VIEW OF OTHER COMPETENT EVIDENCE. In an administrator's action tried to the court to recover a bank deposit made in the name of deceased and defendant, or the survivor of either, and claimed by defendant to have been a gift from decedent, uncontradicted evidence by a competent witness that he saw decedent deliver the bank books to defendant, and that she had kept them in her possession ever since, cured error in admitting testimony of defendant as to delivery and possession of the books in violation of Comp. Laws 1917, § 7123, subd. 3, relating to transactions with decedent.[1]

3. GIFTS—FINDING OF GIFT OF BANK DEPOSIT BY DECEASED DEPOSITOR SUSTAINED. In an administrator's action to recover bank deposits made in the name of deceased and defendant, or the survivor of either, evidence that deceased delivered the bank books to the defendant, who was her daughter and with whom she made her home, and that she caused the deposits to be made in the form in which they were for the purpose of making a gift to defendant, *held* to sustain a finding that the deposits constituted a gift from deceased to defendant.[2]

[1] Citing *Mower* v. *Olsen*, 49 Utah, 373, 164 Pac. 482.

[2] Citing *Holman* v. *Savings Bank*, 41 Utah, 340, 124 Pac. 765; *Boyle* v. *Dinsdale*, 45 Utah, 112, 143 Pac. 136, Ann. Cas. 1917E, 363.

Appeal from District Court, First District, Cache County; *L. B. Wight,* Judge.

Action by Martin Olson, as administrator of the estate of Ellen Olson, deceased, against Olive M. Scott and Hilma E. Scott.   Judgment for defendants, and plaintiff appeals.

AFFIRMED.

*J. C. Walters,* of Logan, for appellant.

*E. T. Young,* of Logan, and *A. E. Bowen,* of Salt Lake City, for respondents.

THURMAN, J.

The plaintiff, as administrator of the estate of Ellen Olson, deceased, instituted this action in the district court of Cache county, Utah, to recover two sums of money which had been deposited by plaintiff's intestate in certain banks, to wit, $1,426.70 in the First National Bank of Logan and $643.29 in the bank of Thatcher Bros. Banking Company, both of which are situated in Logan City, Utah.

It is alleged in the complaint that at the death of said deceased she was the owner of the money deposited in said banks, and that the amount in each case had been deposited in her name and the name of Olive M. Scott, or to the survivor of either of them.   The complaint also alleges that, after the death of said Ellen Olson, defendants withdrew the money so deposited without plaintiff's knowledge or consent and had refused to pay plaintiff the money claiming the same as a gift from the deceased.   It is further alleged that the claim of defendants is wrongful and that they are not entitled to the money or any part thereof.

Defendant Hilma E. Scott admits in her answer that the money had been deposited as alleged in the complaint, but denies that she withdrew the same, or any part thereof, or

ever had it in her possession or under her control. She also denies that she claims the money in whole or in part.

The defendant Olive M. Scott, answering, admits the form of the deposit and the amount thereof; admits that after the death of deceased she withdrew the amount so deposited; and admits she refused to pay the same to the plaintiff and claims to be the rightful owner thereof. She denies generally the remaining allegations of the complaint, and prays that she be decreed to be the rightful owner of the money.

The case was tried to the court without a jury. The court found the issues in favor of defendant Olive M. Scott and that both defendants were entitled to their costs. Judgment was entered accordingly.

Plaintiff appeals and assigns numerous errors, among which are the following: (1) The court erred in admitting certain evidence over plaintiff's objection; (2) the court erred in finding that there was a gift from deceased to defendant Olive M. Scott for the reason no gift was pleaded in the answer; (3) the court erred in making certain findings in respect to a gift of the money, because they are not sustained by any evidence except incompetent evidence erroneously admitted by the court.

As a matter of orderly procedure, we will first dispose of the question raised as to the insufficiency of defendant's answer.

It will be noted that defendant did not specifically allege that she claimed title by gift. She merely denied plaintiff's ownership and alleged affirmatively that she was the rightful owner. It was not necessary to plead her source of title. Besides this, plaintiff in his complaint specifically alleged that defendant claimed the money as a gift from deceased, and in presenting his case in chief proved the very facts upon which defendant relies as constituting the gift. Even if this were not the case, it is extremely doubtful if there is any merit in this assignment.

In *Marra* v. *Bigelow*, 180 Mass. 48, 61 N. E. 275, the court held that under a general denial of plaintiff's title a gift to defendant might be proved.

Plaintiff cites no authority to the contrary, and we know of no reason why the rule adopted in the Massachusetts case should not be applied in the case at bar.

A consideration of the remaining assignments renders it necessary to first give attention to the history of the case as developed by the evidence.

There is no substantial conflict concerning the facts. Omitting details that are immaterial, the evidence tends to show that plaintiff's intestate, Ellen Olson, at the time of her death in 1920, was the surviving wife of Ole Olson who died in May, 1915; that five children were born to them, among whom was the plaintiff and the two defendants; that Ole Olson also had a plural wife by whom he had two children. All of the parties referred to resided in Millville, Cache county, Utah. In 1913 Ole Olson opened an account with the First National Bank of Logan by depositing therein the sum of $400 in the name of Ole Olson, Ellen Olson, his wife, or the survivor of either of them. After that date, other amounts were deposited to the credit of the same account until May 9, 1915, when Ole Olson died, at which time the credits aggregated the sum of $1,500. The account was continued on the same ledger sheet, but a new passbook was issued in the name of Ellen Olson and the account transferred to her September 1, 1915. No further deposits were made to the account except accumulations of interest. Some time after the transfer to Ellen Olson, she caused a transfer to be made to the credit of Ellen Olson and Olive M. Scott, or to the survivor of either of them. Several withdrawals from this account were made by Olive M. Scott until October 31, 1920, when Ellen Olson died, at which time the balance remaining was $1,406.70. There is a discrepancy of $20 between the ledger sheet and the books, but the discrepancy is not material to a decision of the question involved. The balance remaining was all drawn out by Olive M. Scott, the last item, $1,218.96, on February 14, 1921, at which time the account appears to have been closed and the passbook surrendered to the bank.

The foregoing, in substance, is the testimony in chief of

plaintiff's witness, the assistant cashier of the bank. On cross-examination the witness testified that' when the account was changed from the name of Ellen Olson she and Olive M. Scott, and her husband, Ernest Scott, came to the bank. A conversation was had between the witness and these parties and also Mr. Crockett, cashier of the bank. Ellen Olson said she wanted Olive M. Scott to have the money and wanted the books fixed so she would have no trouble about it. Witness consulted Mr. Crockett, and they advised Mrs. Olson to put the account in the form which was adopted. There is other testimony concerning this transaction; but, as it also covers the transaction with the other bank, its consideration for the present will be deferred.

The history of the account with the Thatcher Bros. Company, as related by the cashier, is substantially as follows: Ole Olson was a customer of the bank at the time of his death in May, 1915. Shortly after his death, his wife, Ellen Olson, and children came to the bank concerning the money on deposit. The money was turned over to them on their executing an indemnifying bond. On that date, June 30, 1915, there was on deposit to the credit of that account $3,219.37. It appears without question that this money was divided between the two wives and all the children, the wives receiving $500 each and the children the remainder. Ellen Olson immediately deposited her portion to her own credit in the same bank. She made another deposit of $80 in May, 1916. The account remained in her name until February 5, 1916, at which time there was a balance to her credit of $600.83. On that date she had the account transferred to the credit of Ellen Olson or Olive M. Scott, or the survivor of either. Between that date and the death of Ellen Olson, October 31, 1920, $80 was deposited. There were also several withdrawals made both before and after Mrs. Olson's death. The last two amounts, aggregating $643.29, were withdrawn November 8, 1920, and the account closed.

At the time the account was transferred from Ellen Olson to herself and Olive M. Scott, Ellen Olson and Olive M. Scott and her husband came to the bank. Ellen Olson told witness she wanted to put the money in the name of Mrs. Scott, her daughter, for her use. She said she wanted to leave

it for Mrs. Scott's use at her death and before.  Mrs. Olson asked witness how it could be handled.  He told her it could be done so that Mrs. Scott could have the use of it during her life or when Mrs. Olson died.  Witness understood that was what Mrs. Olson intended to do with it, and he advised her so as to accomplish that purpose.  Witness directed the transaction.  On further examination the witness testified that Mrs. Olson said she wanted it fixed so that she could have the use of the money and that Mrs. Scott could have it at Mrs. Olson's death, or before.

Ernest R. Scott, the husband of defendant Olive M. Scott, testified that after. Ole Olson's death Ellen Olson lived with him and his wife and sometimes went to the home of her other daughter, Mrs. Hilma Scott, for a short time.  She lived just across the street from witness' home.  Mrs. Olson was living at the home of witness at the time of her death.  When Mrs. Olson decided to make her home with him and his wife, witness heard her make the statement that she wanted the money in the bank turned over to her daughter and put in her daughter's name so she could have it.  His wife objected and said if she died before Mrs. Olson did Mrs. Olson might have a hard time to get the money.  It was then suggested by Mrs. Olson that the money be placed in the names of both of them, and that was agreed to.  Mrs. Olson said that was the way the money was in the bank when her husband lived.  She also said that then Olive would have the privilege of drawing the money at times and that it would come to her after Mrs. Olson's death.  On the day of this conversation, or the day following, witness accompanied his wife and Mrs. Olson to the banks.  He was present at the Thatcher Bank when the matter was discussed.  Mrs. Olson told Mr. Hatch she wanted the money changed from her name into Ellen Olson and Olive M. Scott, her daughter; she was going to make her home with her, and she wanted it so her daughter could draw at times and also take the remainder at Mrs. Olson's death.  Mr. Hatch advised her about the same as testified to by him.

Witness also went with Mrs. Olson and his wife to the First

National Bank and was present when the business with that bank was discussed. Practically the same thing was said there that was said at the Thatcher Bank.

A book was issued by each of the banks and handed to Mrs. Scott by Mrs. Olson when they returned home. Mrs. Scott kept them from then on in a little box in her dresser which was in her bedroom. Mrs. Olson had separate rooms in witness' home. She kept none of her effects in Olive's bedroom. Witness saw the books in the drawer, and also on different occasions in his wife's hands when she went to town. She would either draw some money or have interest added. The money she drew was used in the home. Mrs. Olson ate at the table with the rest of the family. She had some little income from the rent of her home and, no doubt, used some of the money Olive drew from the banks. There was no accounting between them as to the money. It was used for general family expenses. To witness' knowledge Mrs. Olson never had possession of either of the bank books after the money was deposited. Sometimes Mrs. Olson was present when Olive drew the money and sometimes Olive went alone. Mrs. Olson was about 60 years of age; she did not spend much money; she did not keep possession of the bank books; she never drew any money from the bank. During the Liberty bond drive, Mrs. Olson said taking Liberty bonds and keeping them would be the same as keeping the money in the bank. Bonds were subscribed for and paid for out of this money. The bonds were in Olive's possession. The witness further testified that the understanding he had was that the money was deposited so his wife could draw it out and then at the death of Ellen Olson the money would go to his wife. It was not understood that Mrs. Olson could draw the money; witness thought she could if she had been so disposed. Ellen Olson never withdrew any money. Olive drew the money to pay for the Liberty bonds. The bonds were kept by Olive in the little box where the bank books were. Mrs. Olson handed the bonds to Olive and told her she could have them, or take them and put them with the books.

Other witnesses testified to the effect that as to the money

deposited in the First National Bank by Ole Olson in the name of Ole Olson, Ellen Olson, or the survivor of either, no question had ever been raised by any of them as to that money belonging to Ellen Olson after the death of her husband.

On the foregoing state of facts, the principal question to be determined is: Was there a gift by Ellen Olson during her lifetime of the money in question to her daughter Olive M. Scott, such as would entitle her to the money after her mother's death?

Before attempting to dispose of this question, we will dispose of another relating to the admission of evidence over the objection of plaintiff. During the course of the trial defendant, Olive M. Scott, a witness in her own behalf, was asked by her counsel, in substance, whether, after the account was put in her and her mother's names, she had ever seen the deposit books in her room at a time when her mother was not present to see what she did. The question was objected to on the grounds that the witness was incompetent under the provisions of Comp. Laws, 1917, § 7123, subd. 3, which prohibits certain parties from testifying to matters of fact which must have been equally within the knowledge of a deceased person under whom the party claims. The objection was overruled, and the witness answered, "Yes, the books were in my room in the dresser drawer."

It is contended by appellant that the question was asked for the purpose of showing that the bank book had been delivered by Mrs. Olson to Mrs. Scott and kept by her in the room in question, and that the fact sought to be established was equally within the knowledge of both.

In support of his contention, appellant cited the following cases: *Clift* v. *Moses,* 112 N. Y. 426, 20 N. E. 392, and *Richardson* v. *Emmett,* 63 N. E. 443, which is also a New York case (170 N. Y. 412). In opposition to the doctrine of these cases, respondent calls our attention to the following: *Stewart* v. *Stewart,* 41 Wis. 624; *Pritchard* v. *Pritchard,* 69 Wis. 373, 34 N. W. 506; *Wilson* v. *Edwards,* 79 Ark. 69, 94 S. W. 927; *Gallagher* v. *Kiley,* 115 Ga. 420, 41 S. E. 613.

The cases cited tend to support the contentions of the re-
spective parties. To attempt to reconcile or distinguish them
would involve the necessity of comparing and interpreting the
various statutes under which the cases were decided. It is
not necessary to assume such burden in the instant case, for,
after all, we would be compelled to place our decision on
other grounds. The witness Ernest R. Scott, who was entire-
ly competent, testified positively that he saw the deceased,
Ellen Olson, deliver the books to his wife, Mrs. Scott, and
that she had kept them in her possession ever since. This
testimony is uncontradicted by any witness or circumstance
in the case. Standing alone, it is sufficient to support
the finding of the court as to delivery and continuous          2
possession. Under such circumstances, the case having
been tried by the court without a jury, the exception is with-
out avail. *Mower* v. *Olsen,* 49 Utah, 373, and cases cited on
page 277, 164 Pac. 482.

This brings us to the principal question to be determined:
Was there a gift to defendant Olive M. Scott entitling her to
the money after the death of Ellen Olson, or, to be more accu-
rate, is the finding of the court to that effect supported by
substantial evidence?

We deem it advisable to consider, the principles of law ap-
plicable to the case before determining the effect of the evi-
dence.

Two decisions have been rendered by this court involving
questions somewhat analogous to the instant case: *Holman*
v. *Savings Bank,* 41 Utah, 340, 124 Pac. 765, and *Boyle* v.
*Dinsdale,* 45 Utah, 112, 143 Pac. 136, Ann. Cas. 1917E, 363.
Appellant relies on the former; respondent, on the latter. In
the *Holman* Case the alleged donor, Mrs. Eslinger, first made
a deposit in the bank in the name of herself and another in
the following form: "The Deseret Savings Bank in account
with Carrie L. Eslinger, Eva Z. Dean." It was so entered in
a passbook which was delivered to Mrs. Eslinger. Mrs. Dean
subsequently died, and Mrs. Eslinger presented the passbook
to the cashier of the bank to have the account transferred to
herself and Mrs. Holman. This was done by substituting in

a new passbook the following entry: "The Deseret Savings
Bank in account with Carrie L. Eslinger or Helen M. Hol-
man." At the time of the transfer, Mrs. Eslinger stated to
the cashier "that she wanted it so fixed that, in case of her
death, Mrs. Helen M. Holman could draw the money, and
she wished her to have it."

It will be noted that the entry of the account in favor of
Mrs. Holman was in exactly the same form as was the entry
in favor of Mrs. Dean. There were no words of survivorship
in either entry, and, so far as the record discloses, there was
no relationship between Mrs. Eslinger and either of the other
parties named suggesting reasons why either should be the
subject of her bounty or the recipient of her favor. The trial
court found against the plaintiff Holman, and this court af-
firmed the judgment. The case appears to have been well con-
sidered. Numerous cases are cited on both sides of the ques-
tion and carefully distinguished. The quotations from the
decisions are apt and to the point. There are one or two
features in the *Holman* Case, however, which clearly distin-
guish it from the case at bar: (1) Mrs. Holman was not a
relative of Mrs. Eslinger, nor was Mrs. Eslinger, as far as
appears, under obligation to Mrs. Holman for favors received
or services rendered; (2) Mrs. Eslinger did not consider the
first transaction a gift to Mrs. Dean, for upon her death she
had the cashier of the bank substitute the name of Mrs. Hol-
man for that of Mrs. Dean. The form of the transaction in
other respects was exactly the same. In the instant case, as
bearing upon the question of intent, we have a state of facts
exactly the reverse. Here, in the first instance Ole Olson in
his lifetime made a deposit to himself and Ellen Olson, or the
survivor of either. Upon that form of entry, after his death
she succeeded to the property without question on the part
of his heirs. After this, and with full knowledge of the ef-
fect of such a transaction, she had the accounts in the bank
transferred to herself and Mrs. Scott in exactly the same
form. As the question of intent on the part of Mrs. Olson is
the controlling question in the case, it does seem to the writer
that the distinguishing features above referred to are entitled

to serious consideration. In any event, it cannot be success-
fully contended that the decision in the *Holman* Case is con-
trolling in the case at bar.

In *Boyle* v. *Dinsdale*, supra, relied on by respondent, the
second headnote of the case succinctly states the facts and the
decision of the court:

"An owner of a bank deposit when making an additional deposit
informed the assistant cashier that she wanted the deposit arranged
so that in case she died, her two children P. and D. could get the
money, but so that she could draw the interest. The money was
thereupon placed in an account by itself, and entered in the de-
positor's passbook as 'payable to P. or D., an equal amount to each,'
but in the bank's ledger as 'payable to self or P. or D., an equal
amount to each.' Held, that there was a gift of the money * * *
during the life of the depositor, with the right on her part to have
the use and benefit of the accruing interest."

In that case the distinction will be noted that the interest
retained by the donor was clearly stated. She was to receive
the interest on the money during her life, and the donees were
to receive the remainder. The relation of the bank was that
of trustee to execute the trust.

For the reasons stated, neither of the Utah cases is decisive
of the question presented here. In this class of cases, more
perhaps than in any other, it is uniformly held that each case
must be determined upon its own facts, and it is very seldom
that two cases are found analogous in every material respect.

As before stated, the controlling question is: What was the
intention of the alleged donor? If this can be determined
from the evidence, the form of the transaction is immaterial.
In this case there appears to be an abundance of testimony to
the effect that Mrs. Olson desired her daughter, Mrs. Scott,
to have the money in question, or at least what remained after
her death. She so stated at the time of the transactions. In
the first instance, she wanted it put in her daughter's name.
The daughter objected to this saying, if she died first, her
mother might not be able to get it. It was then suggested by
Mrs. Olson that it be put in both their names, and in the
same connection suggested that that was the way her husband
had done in the former transaction. Consequently the same
form was adopted and the deposit was entered in the name

of both and to the survivor of either. The passbook was delivered by Mrs. Olson to Mrs. Scott, who thereafter retained continuous possession of it till her mother's death. There is not a line of testimony to the effect that Mrs. Olson ever afterwards had possession of the book or personally drew any money from the bank. As far as the record discloses, Mrs. Scott was the only person that ever drew from the bank, and the money drawn by her was used for the support of the family of which Mrs. Olson was a member. This is another feature of the case bearing strongly on the question as to whether or not a gift was intended. Mrs. Olson, some months after her husband died, moved her effects to, the home of Mrs. Scott and made that her home during the remainder of her life. She made short visits to another daughter living across the street, but the evidence is that she made her home with her daugter Olive.

The case of *Kelly* v. *Beers,* 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543, cited by respondent, is strikingly analogous to the instant case in many important particulars. The fourth paragraph of the syllabus clearly reflects the gist of the opinion as far as applicable here:

"One deposited money in a savings bank in her own name. Subsequently she changed the account so as to make the deposit stand in her own name and the name of another, her daughter, or the survivor of them. The change was made for the purpose of enabling the 'daughter to get the deposit on the depositor's death. After the change had been made, the depositor frequently stated that she had fixed her bank account so that either she or her daughter could draw the money out at any time, and that in the event of her death the daughter would have the deposit. The passbook was taken by the daughter and placed in the joint and equal custody of both. The depositor was capable of taking care of herself, and of her affairs, so that there was no necessity for conferring on the daughter the power to draw money as a matter of convenience. Held to show that the depositor intended to give the daughter joint interest in, and ownership of, the deposit, authorizing the daughter to claim the deposit on the depositor's death, though the depositor had prior to the changing of the account made a will disposing of her deposits."

It is not necessary in the instant case to go as far as did the New York Court of Appeals in the case just cited. A

careful reading of the entire opinion, which is well reasoned and apparently well supported, discloses the fact that the New York court, in upholding the gift involved in that case, was confronted with difficulties not existing in the present case. In the first place, the trial court in that case found against the plaintiff holding that no gift had been established. The plaintiff therefore had the burden on appeal. In the second place, the donor had executed wills and codicils whereby she ignored the gift in question, thus indicating there had been no intent on her part to make the gift. These questions are disposed of in favor of the appellant and the gift sustained.

Respondent also refers us to the following cases: *Mulfinger* v. *Mulfinger*, 114 Md. 463, 79 Atl. 1089; *Hoboken Bank for Savings* v. *Schwoon et al.*, 62 N. J. Eq. 503, 50 Atl. 490; *Dennin* v. *Hilton* (N. J. Ch.) 50 Atl. 600; *Booth* v. *Oakland Bank*, 122 Cal. 19, 54 Pac. 370; *Carr* v. *Carr*, 15 Cal. App. 480, 115 Pac. 261; *Drinkhouse* v. *German Savings & Loan Society*, 17 Cal. App. 162, 118 Pac. 953; *Sprague* v. *Walton*, 145 Cal. 228, 78 Pac. 645; *Kennedy* v. *McMurray*, 169 Cal. 287, 146 Pac. 647, Ann. Cas. 1916D, 515; *Crowly* v. *Sav. Bank*, 30 Cal. App. 144, 157 Pac. 516; *McCarthy* v. *Holland*, 30 Cal. App. 495, 158 Pac. 1045.

Many of the cases cited strongly support respondent's contention. It is not necessary to review them at length.

In addition to the *Holman* Case, which we have reviewed and distinguished, appellant places strong reliance on the case of *Whalen* v. *Milholland*, 89 Md. 199, 43 Atl. 45, 44 L. R. A. 208. Appellant says in his brief that the case is "identical in all respects to the case at bar." That assertion must be accepted with many grains of allowance. The money on deposit in the bank originally belonged to Elizabeth O'Neil. It was afterwards entered to the credit of "Elizabeth O'Neil and Mary Whalen payable to the order of either or the survivor." The words "joint owners" were added by the bank afterwards when that form was adopted. The entries were stamped on the deposit or passbook. The court at page 201

of 89 Md., at page 46 of 43 Atl., at page 209 of 44 L. R. A., of the opinion, says:

"There is no pretense that anything evidences a surrender by Miss O'Neil of her interest and estate in this money, other than the entry in the passbook and the alleged delivery of that book, or both combined."

The court then proceeds to discuss the law applicable to the case, and states that, in order to "make a gift perfect and complete, there must be an actual transfer by the donor of all right and dominion over the thing given." The difference between a deposit in a bank of issue, discount and deposit, and a deposit in a savings bank, is clearly defined by the court. The former cannot be transferred by a delivery of the passbook because, no matter where the book may be, the depositor may withdraw the money by check. In the case of a savings bank deposit the court in its opinion says:

"The great weight of authority supports the proposition that a gift of savings bank deposits by delivery of the passbook is a valid and complete gift of the money"—citing authorities.

The court finally concludes that—

"Though the delivery of the passbook would have been a delivery of the fund, the circumstances developed in the testimony fail to show a delivery of the book."

While the case just reviewed is implicitly relied on by appellant as a "clear exposition of the law," we believe we have said enough to demonstrate that it is not an authority for appellant's position in the case at bar. It is distinguishable from the instant case on every controlling question.

Appellant refers us to numerous other cases involving the law relating to gifts: *Pearre* v. *Grossnickle,* 139 Md. 274, 115 Atl. 49; *Robinson* v. *Mutual Savings Bank,* 7 Cal. App. 642, 95 Pac. 533; *Schippers* v. *Kempkes* (N. J. Ch.) 67 Atl. 1042; *Re Behring's Estate,* 80 N. J. Eq. 165, 82 Atl. 931; *Drinkhouse* v. *Society,* 17 Cal. App. 162, 118 Pac. 953; *Kelly* v. *Beers,* 194 N. Y. 49, 86 N. E. 980, 128 Am. St. Rep. 543; *Staples* v. *Berry,* 110 Me. 32, 85 Atl. 303; *Lufkin* v. *Lufkin,* 111 Me. 588, 90 Atl. 493; *Taylor* v. *Henry,* 48 Md. 550, 30 Am. Rep. 486; *Meyers* v. *Albert,* 76 Wash. 218, 135 Pac. 1003; *Denigan* v. *Savings Union,* 127 Cal. 137, 59 Pac. 389; *Schick*

v. *Grote*, 42 N. J. Eq. 352, 7 Atl. 852. Appellant concludes his citations with the following statement:

"The rule sustained by the majority of cases is that the mere fact that money is deposited to the account of the owner and another, or to the account of the owner or another, does not show a gift."

There can be no serious controversy concerning this proposition. The mere changing of a bank account from the name of one person to that of another, without other evidence of intent, will not constitute a gift. But while this proposition is uncontrovertible, it has no application to the instant case. It is unnecessary to repeat or comment 3 upon the indubitable proof of intent on the part of Ellen Olson to make a gift of the money in question to her daughter Olive M. Scott. This old mother in her declining years gave up her home and elected to make her home with her daughter and become a member of her family. She had means of her own and evidently was not disposed to become a burden upon her daughter. Among other items of property, she had these saving deposits in the banks of Logan. She concluded to give them to her daughter. While she had from previous experience an idea of how it might be accomplished, she consulted the cashiers of the respective banks and found that their advice was in accord with her own experience. There can be no reasonable doubt as to her intention to make the gift in such form as to be available both before and after her death. In any event, the trial court so found, and the evidence is ample to sustain the finding.

The judgment of the trial court is affirmed, with costs.

CORFMAN, C. J., and WEBER, GIDEON, and FRICK, JJ., concur.