COLUMBIA TRUST CO. v. ANGLUM.

No. 4086.   Decided April 22, 1924.   (225 Pac. 1089.)

1. HUSBAND AND WIFE—EVIDENCE HELD TO SHOW JOINT OWNERSHIP BY HUSBAND AND WIFE IN BANK ACCOUNT WITH RIGHT OF SURVIVORSHIP. Evidence *held* to show that as to a bank account in the joint names of deceased and his widow there was a joint ownership with the right of survivorship, and in finding otherwise the trial court erred.[1]

[1] *Boyle* v. *Dinsdale*, 45 Utah, 112, 142 Pac. 136; *Olson* v. *Scott*, 61 Utah, 42, 210 Pac. 987.

2. HUSBAND AND WIFE—EVIDENCE HELD TO SUSTAIN FINDING DE-CEASED OWNED HOTEL PROPERTY AT HIS DEATH. Evidence *held* to sustain finding that the hotel conducted by deceased and his wife was deceased's property at his death.

3. EXECUTORS AND ADMINISTRATORS—EVIDENCE HELD TO SHOW VALUE OF ESTATE TO BE ABOVE STATUTORY EXEMPTION OF WIDOW SO AS TO PREVENT HER FROM RESISTING LEGAL RIGHT OF ADMINIS-TRATOR. Evidence *held* to show value of hotel property, consti-tuting principal asset of estate, to be not less than $2,500, and hence was above statutory exemption allowed sole survivor under Comp. Laws 1917, § 6409, so as to render untenable her contention that, there being no debts, legal right of adminis-trator should not be enforced.

4. EXECUTORS AND ADMINISTRATORS—HEIR MAY NOT PREVENT JURIS-DICTION OF PROBATE COURT BY REDUCING VALUE OF ESTATE WITH-IN EXEMPTIONS BY OFFSETTING CLAIMS AGAINST ESTATE. An heir may not, after voluntarily paying ordinary obligations of deceased, claim the amounts of such payments; and thus reduce value of estate so as to entitle such heir to a summary distri-bution of the estate under exemptions allowed by statute, with-out the probate court assuming jurisdiction.

5. EXECUTORS AND ADMINISTRATORS—WIDOW PAYING DECEASED'S CONTRACTUAL OBLIGATION HELD ENTITLED TO CLAIM AGAINST ES-TATE FOR AMOUNT PAID. A widow voluntarily paying the obli-gation of her deceased husband under his contract of purchase of hotel, *held* entitled to a claim against the estate for the money so paid.

6. EXECUTORS AND ADMINISTRATORS—EXPENSES OF FUNERAL, LAST SICKNESS, AND OF MONUMENT, PAID BY WIDOW, HELD PROPER CHARGES AGAINST ESTATE. Amounts paid by widow for funeral expenses of her deceased husband for his last sickness, includ-ing hospital dues and medical services, and for erection of monument, *held* proper charges against the estate which should be allowed her, funeral expenses taking precedence under Comp. Laws 1917, § 7666.

7. EXECUTORS AND ADMINISTRATORS—HOSPITAL DUES AND MEDICAL ATTENDANCE, IF PAID BY ANOTHER, ARE PROPER CHARGES AGAINST ESTATE. Hospital dues and medical attendance are charges proper to be presented to and allowed against estate, and if paid by another are proper charges to be allowed such person for the money so advanced, if reasonable in amount.

8. EXECUTORS AND ADMINISTRATORS—TRIAL COURT SHOULD, IN ITS DISCRETION, WITHHOLD ENFORCEMENT OF ADMINISTRATOR'S JUDG-

MENT AGAINST WIDOW UNTIL ADJUDICATION OF HER CLAIMS AGAINST ESTATE. Where administrator recovered judgment against widow for recovery of deceased's hotel property, operated by widow, and for $1,000 damages, amount paid by widow for funeral expenses, if reasonable, should be allowed as off-set against $1,000 judgment, and trial court should, in its discretion, withhold enforcement of balance of judgment until claims of widow against estate have been adjudicated, in view of Constitution and statutes permitting equitable defenses against legal claims.

Appeal from District Court, Third District, Salt Lake County; *L. B. Wight*, Judge.

Action by the Columbia Trust Company, as administrator of the estate of William J. Anglum, deceased, against Anna Anglum. Judgment for plaintiff, and defendant appeals.

REMANDED, with directions.

*Willard Hanson, H. J. Fitzgerald,* and *A. H. Hougaard,* all of Salt Lake City, for appellant.

*C. A. Rice, J. B. Wilkins,* and *Irvine, Skeen & Thurman,* all of Salt Lake City, for respondent.

GIDEON, J.

The respondent, as administrator of the estate of William J. Anglum, deceased, asks judgment against defendant for the possession of certain personal property alleged to belong to the estate and damages for the detention of the same.

It is alleged that the deceased died intestate November 2, 1918, in Salt Lake county, leaving as his only heirs the surviving widow, the appellant, and a daughter, Irene Munley. The complaint then alleges that at the date of his death the decedent was the owner and in possession of certain hotel furniture, fittings, and effects, and also a lease of the Adrian Hotel, in Salt Lake City, of the value of approximately $6,000 and $1,564 in money on deposit in a local bank in the

joint names of the deceased and his wife, appellant. Also that the deceased at the date of his death had in his possession certain moneys amounting to $400 or $500. It is then alleged that the appellant, as the widow, took possession of the entire estate, and has retained possession and conducted the business of the Adrian Hotel and received the rents, issues, and profits therefrom; that demand had been made by the administrator for the delivery of the property and for an accounting by the appellant of the income and profits which demand has been refused. Damages are alleged by reason of such failure and refusal in the sum of $5,000.

The prayer is for a delivery of the property of the estate to the administrator, judgment for the rents and profits accruing from the possession of the same, and for such further and different relief as may be just and meet in the premises.

The action was originally instituted by a local bank as special administrator. The findings are to the effect that the respondent was a special administrator. It, however, appears from the record that subsequent to the institution of the action the present respondent, Columbia Trust Company, was appointed administrator of the estate, and as such was substituted as plaintiff. We shall treat this case as having been prosecuted to judgment by the regular administrator.

In the amended answer the appointment of the administrator is admitted. It is also admitted that at the date of the death of William J. Anglum there was on deposit with a local bank in the joint names of the deceased and appellant the sum of $1,564. Possession of the hotel is also admitted; also that appellant carried on and conducted the business of said hotel. There is a general denial. As a separate and affirmative defense it is alleged that on or about May 18, 1918, the deceased and the appellant purchased the hotel, together with the lease and good will, and undertook to pay therefor the sum of $2,800, $75 quarterly after the expiration of six months from the date of the purchase, and that at the date of the deceased's death there had been paid to apply on the property the sum of $900, and no more. It is then alleged that the appellant had paid the costs and expenses of the last illness of the deceased, amounting to the sum of $197.65; that

she had paid the funeral expenses and caused to be erected a certain tombstone over the grave of the deceased at a cost of $465. As a further defense it is alleged that since the death of the deceased the cost of operating the hotel had been in excess of the rents, profits, and issues derived therefrom; that appellant is entitled to reimbursement from the estate for the payment of the funeral expenses, expenses of the last illness, and the cost of erecting the tombstone. It is then al-leged that appellant is entitled, under Comp. Laws Utah 1917, § 6409, to have the estate of the deceased, if any there be, not exceeding in value the sum of $2,000, together with the exempt personal property, set aside and distributed to her as a homestead as the surviving widow of the deceased. It is further alleged that the money on deposit in the local bank was accumulated as a result of the sole efforts of appellant, and was her sole and separate property; that the payments made upon the hotel were made by the appellant, and that she has an equitable interest in such chattels, and that the same is the sole and separate property of appellant.

Trial was had to the court. Findings of fact were made and judgment entered against appellant for possession of the hotel property, for the money on deposit in bank, with interest, and for $1,000 damages. From that judgment this appeal is prosecuted.

The errors assigned assail the findings as not being supported by the evidence and as being contrary to the evidence. Under the errors assigned it is also contended that the findings as made do not support the judgment and that the court failed to find upon material issues presented by the affirmative defense.

The property involved is personal property. There are two heirs, the widow and a daughter. The daughter is a married woman, over the age of twenty-one years, and resides with her husband. It appears that either in the month of April or in the early part of May, 1918, the appellant and her husband moved from the state of Montana to Salt Lake City. Shortly thereafter they began negotiations which, on May 18th of that year, resulted in the purchase of the hotel property in controversy. At that time the appellant and the

deceased had but a few hundred dollars between them. It is the testimony of appellant that that money was her personal property. The negotiations for the hotel property were carried on by appellant's husband. She was present and presumably participated in the negotiations to some extent, at least. The sale, however, was consummated with the deceased. It is not clear from the record whether the sum paid for the property was $2,500 or $2,800. The money for the purchase of the hotel was borrowed from a mutual friend of appellant and deceased, a Mrs. Adams, and the note executed to her was for $2,800. As security for that loan the appellant and the deceased delivered to Mrs. Adams two insurance policies on the life of the deceased. The amount of these policies was approximately $3,500. The appellant was the beneficiary named in the policies. These parties proceeded to and did operate the hotel until the death of the husband. The license for the operation of the hotel was in the name of the husband, and it is apparent that he was recognized as the owner and manager of the same. The deceased and his wife resided at the hotel, and it is in evidence that both devoted their time and energy to work connected with its operation. Shortly after the purchase of the hotel the deceased and appellant opened a banking account with a local bank and the money was deposited in the name of William J. Anglum or Mrs. William J. Anglum. The deceased, during his lifetime, drew checks upon that account signed by himself alone. The record does not disclose that during that time appellant drew any personal checks against the account. The widow, after the death of her husband, continued to operate the hotel, and shortly after the death of her husband had the city license changed from the husband's name to her own name. In January or February following the death of William J. Anglum she collected the insurance and paid to Mrs. Adams the balance, to wit, $1,900, due on the note which she and her husband had jointly executed for the $2,800 used in the purchase of the hotel. The funeral expenses, expenses of the last illness and cost of the monument were all paid out of the money on deposit in the local bank. Mrs. Anglum con-

tinued to operate the hotel until the institution of this action in February, 1922.

The court made findings to the effect that William J. Anglum, at the date of his death, was the sole owner and was in possession of the furniture, fittings, effects, and lease of the Adrian Hotel; that he was also the sole owner of the $1,564 on deposit in the joint names of deceased and his wife; that upon the death of William J. Anglum the appellant, as the widow, took possession of the estate, and has ever since retained the same, and was at the date of trial in possession of the same, and had conducted the hotel and collected the rents, issues, and profits therefrom; that demand for possession was made by respondent, and that demand was refused. The court also found that the appellant and deceased did not jointly purchase the Adrian Hotel, and that appellant, prior to the death of her husband, had no right or interest or claim to any part or parcel of the property; that appellant had received profits from the operation of the hotel over and above all expenses in excess of $1,000.

In the assignments these findings are separately assailed. It will be convenient to consider the court's finding as to the ownership of the money on deposit in the bank and of the hotel property separately.

It is without dispute that the original account in the bank was in the name of William J. or Mrs. William J. Anglum. The account remained in that condition until the death of the husband. The appellant testified positively that it was agreed that the account should be so kept, and gave as the reasons for that agreement that it was understood and agreed that the survivor should have the absolute right and ownership of the money so deposited. The legal question respecting that item is whether the court was right under the evidence in concluding that that money was a part of the estate of the deceased.

There is not, nor in our judgment can there be, any doubt that it was the intention of the deceased and appellant that any money remaining in the joint account at the death of the other should become the property of the survivor. The form of the deposit itself indicates joint control over the funds so

deposited. Either was at liberty to deplete the funds by his individual check drawn against the 'deposit. The appellant testified that the $200 deposited at the time of the opening of the account was her individual property. That testimony is uncontradicted. The deposits made later were the receipts from the operation of the hotel. Both appellant and her husband gave their time and efforts to make the hotel a success. These people were past sixty years of age. Their only daughter was married and was residing with her husband. They were without property, and the purchase of this hotel, made possible by the loan from a mutual friend, was apparently their last effort to accumulate means to protect them against want at the time of life when their earning capacity would be greatly diminished, if not entirely wiped out. There was an indebtedness existing against the hotel upon which appellant and her deceased husband were jointly liable, she having joined her husband in signing the note to Mrs. Adams.

Respondent relies upon the opinion of this court in *Holman* v. *Savings Bank,* 41 Utah, 340, 124 Pac. 765, as being decisive of appellant's rights in the money deposited in the bank. The facts in that case were not similar to the facts here. In the record of that case it did not appear that there was any relationship between the owner of the money, Mrs. Eslinger, and the claimant, Mrs. Holman. Nor were there any facts, except the form of the deposit, to indicate an intention to make a gift. The lower court held that there was no such intention, and this court affirmed the judgment. In the present action, as has been pointed out, there are cogent reasons in addition to the testimony of Mrs. Anglum that it was the intent of the parties to establish a joint ownership of the funds deposited with the right of survivorship. In fact, the circumstances surrounding the transaction are much more convincing than the statements of Mrs. Anglum, and would have justified the court in concluding that there was a joint ownership with the right of survivorship independent and regardless of the testimony of appellant.

The Supreme Court of New York, in considering a question similar to the one under consideration here, in *Kelly* v.

*Beers,* 194 N. Y. at page 55, 86 N. E. 982, 128 Am. St. Rep. 543, says:

"The possibility of so fixing a bank account that two persons shall be joint owners thereof during their mutual lives and the survivor take upon the death of the other is so well established that we may assume and need not discuss it. I think also it is so apparent that it must be conceded that the account in question on its face imports such joint ownership by appellant and the deceased with final sole ownership by survivorship. It has been written, however, in various decisions, that the mere form of the account in such a case as this will not be regarded as sufficiently establishing the intent of the person making it to create a trust in behalf of another or to give to such another joint interest in or ownership of the deposit"—citing cases.

In R. C. L. p. 527, a statement of the law upon this question will be found as follows:

"It is well established that a bank account may be so fixed that two persons shall be joint owners thereof during their mutual lives, and the survivor take the whole on the death of the other. In creating a joint bank account with right of survivorship, it is a matter of no importance that the particular terms 'joint ownership' and 'joint account' are not used; the controlling question is whether the person opening the account intentionally and intelligently created a condition embracing the essential elements of joint ownership and survivorship. No particular formula is required, and courts will be controlled by the substance of the transaction rather than by the name given it."

See, also, *Dickson* v. *Jonesboro Trust Co.,* 154 Ark. 155, 242 S. W. 57; *Craig* v. *Bradley,* 153 Mo. App. 586, 134 S. W. 1081; *In re Klenke's Estate,* 210 Pa. 572, 60 Atl. 166; *George* v. *Dutton's Estate,* 94 Vt. 76, 108 Atl. 515, 8 A. L. R. 1014.

Both appellant and respondent, in support of their claims, rely upon the opinions of this court in *Boyle* v. *Dinsdale,* 45 Utah, 112, 142 Pac. 136, Ann. Cas. 1917E, 363, and *Olson* v. *Scott,* 61 Utah, 42, 210 Pac. 987. In each of those cases the question determined by the court was whether there was a gift inter vivos, not whether there had been the creation of a joint ownership with right of survivorship. An examination of those opinions, however, will emphasize the fact that the intention of the parties should control, and not the mere form of deposit. The rule announced in those cases should control the parties here so far as the money deposited in

bank is concerned. At the time of the deposit both appellant
and her husband were sui juris. There appears to be no legal
reason why they could not have created a joint ownership in
this deposit with right of survivorship in either. That, as
we have attempted to point out, is clearly what they did do.
It is true this court, in the case of *Holman* v. *Savings Bank,*
supra, held that a mere deposit in the joint names of two
did not, in and of itself, constitute a gift; but the court did
not hold that if it had appeared from other evidence that it
was the intention of the parties to make a gift the mere form
of deposit would have excluded the court from so finding.
On the contrary, the language found in the opinion of that
case clearly indicates that had there been other evidence in
addition to the form of the deposit indicating a gift it would
have been the duty of the court to have upheld such intent.
In the opinion it is said:

"In addition to the forms of deposit there are usually also facts
and circumstances shown from which the courts deduced the inten-
tion of the alleged donor to make a gift or that he did not so in-
tend. It may be said that each case depends to a very large extent
on its own facts and circumstances. In all of the cases cited above
the essential element, namely, the joint ownership or that a gift
was actually intended and executed for the purpose of creating a
joint ownership, is either clearly established by the evidence or
found as a fact by the trial courts."

The opinion in *Denigan* v. *Hibernian Sav. & Loan Soc.,* 127
Cal. 137, 59 Pac. 389, holds that a deposit in favor of F. D.
or E. D., F. D. being the husband, in the absence of any evi-
dence of the purpose of the deposit except the form of the
deposit does not indicate or support an intent to part with
the title to the money so deposited. That case, however,
clearly indicates that, if it had been made to appear by other
evidence that such was the intent, it would have been the
duty of the court to give effect to such intent.

There does not appear in this record any conflict in the
testimony as to what was the intent of the parties at the time
they made this deposit. The only conclusion that finds sup-
port in the evidence, in our judgment, or that can logically
or legally be deduced or inferred therefrom, is that the find-
ing of the trial court respecting the ownership of this deposit

is erroneous. The evidence, the acts and the relationship of the parties lead to but one conclusion, namely, that the survivor was entitled to have whatever remained in the account at the death of the other.

The court also made a finding that the hotel was the property of the deceased at the time of his death. That finding, in our judgment, is supported by substantial, competent evidence. The testimony is all to the effect that the sale of the hotel was made to the deceased; that he con- **1, 2** ducted it in his own name during his lifetime, and that he had control and management thereof. The fact that his wife worked in and about the hotel cannot affect the deceased's ownership.

The court made no finding as to the value of the hotel property. Neither is there any finding that there was any other property except the deposit in bank belonging to the estate. It does however, sufficiently appear that the hotel and bank deposit are the only property in question, and that the deceased had no interest in other property. It is contended by appellant that, as it sufficiently appears that the value of the estate will not exceed the exemptions allowed to the widow under Comp. Laws Utah 1917, § 6409, and as it does appear that there are no debts, and that the funeral expenses and expenses of the last illness have been paid by the widow, the administrator should not be awarded or adjudged to be entitled to the possession of this property. The appellant relies upon the principle or rule of law expressed in 18 C. J. at page 880, as follows:

"Where there are no unpaid debts and the sole heir or distributee is in possession of the personal property, the courts will uphold and protect his equitable title against the legal right and title of the administrator, also where the personal property of an estate is of less value than a certain amount, and consequently comes within a statute giving it all to the widow, and she is in possession of it, she has an equitable title thereto as against the heirs, even though there is no administration."

Other authorities to the same effect cited are: *Lewis* v. *Lyons,* 13 Ill. 117; 23 C. J. 1172; *Kennedy* v. *Davis,* 171 Ala. 609, 55 South. 104, Ann. Cas. 1913B, 225; *White* v. *Ward,* 157 Ala. 345, 47 South. 166, 18 L. R. A. (N. S.) 568; *Kos-*

*lowski* v. *Newman*, 74 Neb. 704, 105 N. W. 295, 3 L. R. A. (N. S.) 704.

The court made no finding as to the value of the hotel property. In our judgment it appears that the value of the property is not less than $2,500. The rule invoked, therefore, does not apply to the facts as they appear in this case.

The widow, appellant, voluntarily paid the obligations of her deceased husband contracted at the time of the purchase of the hotel, and necessarily has a claim against the estate for the money so paid. She is also entitled to have claims allowed for the voluntary payments made of the expenses of the last sickness. We do not understand, however, that the cases go to the extent of permitting an heir of an estate, after voluntarily paying the ordinary obligations of a deceased person, to claim the amounts of such payments and thus reduce the value of the property of the estate so as to entitle such heir to a summary distribution of an estate under the exemptions allowed by statute; in other words, to reduce the value of an estate by the amount of such payments to prevent a probate court from assuming jurisdiction of the property of the estate.

The appellant interposed as a defense the amounts paid for the funeral expenses, the expenses of the last sickness, including hospital dues and medical services; also an item for the erection of a monument. These items are all proper charges against the estate. The expenses of the last sickness were debts existing and in effect at the time of the death of the deceased. Funeral expenses were necessarily contracted in burying the deceased. Funeral expenses take precedence over all claims against an estate. Comp. Laws Utah 1917, § 7666. These expenses are a necessary part of caring for and disposing of the body of the deceased. There is authority authorizing any one paying or advancing the necessary means for funeral expenses, provided such amount is reasonable, to offset the same against any claim that the estate may have against the party advancing such expenses. The reasoning upon which that authority is based appeals to us as being not only sound and just, but founded upon necessity and the require-

ments of humanity as well as the customs of civilized communities everywhere. *Patterson* v. *Patterson*, 59 N. Y. 574, 17 Am. Rep. 384. The hospital dues and medical attendance are charges proper to be presented to and allowed against an estate, and if paid by another are proper charges to be allowed such person for the money so advanced if reasonable in amount.

The court further found that the rents and profits derived from the operation of the hotel over and above all expenses of operation were in excess of $1,000, and judgment was awarded against appellant for $1,000 with interest. There is competent, substantial testimony to support that finding. The amount paid for funeral expenses, if found by the court to be reasonable, should be allowed as an offset against the $1,000 judgment. Under our Constitution and statutes equitable defenses are authorized and permitted against legal claims. As we have indicated, the appellant is entitled to be reimbursed from the estate for the amount paid on the note to Mrs. Adams and for the expenses of the last sickness, and the court should, in its discretion, withhold enforcement of the balance of the $1,000 judgment until the claims of the appellant against the estate have been adjudicated.

The cause will be remanded to the district court with directions to correct its findings and modify its judgment in accordance with the views herein expressed. Appellant will be allowed costs.

THURMAN, FRICK, and CHERRY, JJ., and WOOLLEY, District Judge, concur.

WEBER, C. J., did not participate.