## GIBBONS v. BRIMM et ux.

No. 7596. Decided May 2, 1951. (230 P. 2d 983.)
Rehearing denied June 19, 1951.

622

See 26 C. J. S., Deeds, sec. 207. Support of grantor, deed as affected by breach of agreement for. 14 Am. Jur., Covenants, Conditions and Restrictions, sec. 117; 112 A. L. R. 670.

*L. E. Nelson,* Logan, for appellant.

*George C. Heinrich,* Logan, for respondent.

CROCKETT, Justice.

This case follows a familiar pattern. An elderly person, (in this instance the aunt, Catharine S. Gibbons) having some property and an unusual affection for a younger relative (her niece, the defendant, Hilda A. Brimm) conveys her property to her niece for which the latter is to provide her a home and care during the remainder of her lifetime; and as is fairly common in this type of situation,

human frailties cause the plan to go awry. At the time of the agreement the plaintiff, herein sometimes called Aunt Catharine, was aged 75 and in ill health; she owned a home and furniture, some farm land and farm equipment at Mendon, Cache County, Utah, and also possessed a savings and checking account. She conveyed all of the aforementioned property to Hilda by deed, bill of sale and assignment, in consideration for the latter's promise to provide her with a home and care, including costs of medical, hospital and nursing services and proper burial.

As is quite usual, there was a third ingredient with which aunt Catharine had not reckoned, Hilda's husband, for whom she did not have the same love and affection she had for her niece. After a few months of comparative success under this arrangement, small dissensions arose, grew into greater troubles and ended in a complete rift, resulting in this law suit by the plaintiff to recover her property. From an adverse judgment, plaintiff appeals.

The plaintiff apparently set out to make two main contentions in seeking to avoid the effects of the deed, bill of sale and assignment. (1) That she was so infirm of body and mind that her will was overcome to the extent that the execution and delivery of the documents were not her voluntary acts; and (2) That the defendants breached the agreement to provide her a home and care, which entitles her to rescission. The burden of proving these contentions was upon the plaintiff.

It is to be kept in mind that, even though this is a case in equity in which this court will review the record, yet we will not disturb the findings of the trial court unless the evidence clearly preponderates against them or the court manifestly misapplied proven facts. *Stanley* v. *Stanley*, 97 Utah 520, 94 P. 2d 465; *Maxfield* v. *Sainsbury*, 110 Utah 280, 172 P. 2d 122.

We assume that it is unnecessary to remind appellant that it was the prerogative of the trial court to believe the defendants' evidence if he chose to. In determining which evidence he would credit, because of his opportunity of seeing the parties and the witnesses, observing their appearance, their demeanor on the witness stand, their apparent candor or their want of it, he could appraise certain intangibles not observable by this court from the record. Without delineating them, we observe that the evidence reveals some discrepancies in plaintiff's testimony concerning the ownership and disposition of personal property which may have given rise to some skepticism on the part of the trial court with respect to plaintiff's frankness, or perhaps better stated, her lack of memory and understanding of details due to her infirmity and advanced age.

The plaintiff made some effort in the evidence to support her first point that the execution of the conveyances were not voluntary. The sequence of events themselves, without more, would be sufficient refutation of this contention. But taken together with other evidence ■ there is ample to warrant the court in refusing to believe that plaintiff had met her burden of proof that she did not intend the conveyances. The contention is obviously untenable and at the oral argument in this court, her counsel stated that she relied solely on the second ground.

We therefore address ourselves to the plaintiff's assertion that she is entitled to rescission and cancellation of the documents of conveyance because the defendants failed and refused to perform their part of the agreement. While there is some authority to the contrary, we ■ think that the weight of authority and the better view is that in cases of this character, where the grantee repudiates, or substantially fails to perform, the agreement, that rescission is a proper remedy. Many cases are cited and discussed in plaintiff's brief to that effect, most of

which are referred to in an annotation, 112 A. L. R. 670. At page 676 it is stated:

> "The doctrine which obtains in the great majority of the states is that conveyances of property in consideration of agreements to furnish support are in a class peculiar to themselves, and that ordinarily, if the grantee in such a conveyance repudiates, or substantially fails to perform, his agreement, a cancellation of the conveyance, and a rescission, may properly be decreed."

See *Chadd* v. *Moser*, 25 Utah 369, 71 P. 870, where this was assumed to be the rule in this state, but where, as here, the court found the evidence insufficient to show a breach.

Were this a human interest story, the evidence of the conduct and relationship between these parties might be interesting to relate. But because of the desirability of limiting judicial opinions to the minimum necessary to adequately cover the point involved, a brief statement of some of the evidence which will support the trial court must suffice.

The plaintiff's evidence was, on many points directly contrary to that of the defendants. However, the latter presented evidence which the trial court could, and apparently did believe: that aunt Catharine had promised that upon her death Hilda should inherit what she had; had made out a will giving her property to Hilda and upon that being done, Hilda had conveyed to Catharine her one-ninth interest in the property; that about June 1, 1948, when Catharine was in poor health and could not be alone, she called Hilda who had been teaching school in Ogden, and asked her to come to Mendon to take care of her and the farm. Hilda and her husband did this and the latter worked the farm all that summer and fall. The court found his services were reasonably worth the sum of $1200 (this amount was neither charged nor paid). During August, Catharine authorized Hilda's joint use and control of her bank account. In January, 1949, the parties orally agreed to the arrangement earlier described herein; and descrip-

tions of the plaintiff's property were obtained from plaintiff's attorney and deeds prepared, which, according to plaintiff's own testimony, were in her possession two or three days before she signed them. On January 25, 1949, plaintiff executed and delivered the deed to the real estate and a bill of sale to the personal property to Hilda. On the 23d day of February, 1949, the plaintiff assigned to Hilda a note and mortgage on some real estate owned by her in Power County, Idaho. Catharine said that she was glad that she had everything fixed up; that someone else had the worry. As late as June, 1949, the plaintiff authorized the defendants to make a settlement with the plaintiff's brother, John C. Anderson, to purchase from him a one-ninth interest in the property, which they did, using $2,000 of the plaintiff's bank account for that purpose; this one-ninth interest was, with the plaintiff's approval, conveyed to Hilda.

It would unduly burden this opinion to detail the difficulties and the comings and goings of aunt Catharine from Hilda's home to live with others and back until on February 13, 1950, Catharine left for good and demanded her property back. In summary, defendants' evidence is that Catharine lived with Hilda during most of that time and that they got along fairly well; that Hilda did everything she reasonably could to comply with the agreement and provide a home and the necessities of life, as well as love and companionship for her aunt; that her husband, Byron Brimm, cooperated to the best of his ability but because of the dislike the plaintiff had for the latter, she made it difficult for Hilda to do so, even going so far as to suggest that Hilda divorce him as a condition to keeping the agreement.

The plaintiff had no right to expect that Hilda would completely absorb her own life in taking care of her aunt. She had a husband and other interests to which she

naturally desired to give some time and attention. Catharine was a woman of sufficient experience that ██ this should have been understandable to her, she herself had been married four times,. once widowed and thrice divorced. Hilda's position in this case, supported by her evidence, is that she constantly has been and now is willing and able to provide a home, care and companionship for the plaintiff as was contemplated in the original arrangement, but that the plaintiff has refused to cooperate to permit her to do so. It is not to be disputed that under the original agreement what plaintiff bargained for and expected to get was personal care, attention and companionship. Nevertheless, all that Hilda was obliged to do was to make a reasonable and honest effort to perform her obligation. The plaintiff herself was required to make the same effort at cooperation. She could not put herself in the position of making it extremely difficult, if not entirely impossible, for Hilda to perform and then take advantage of that failure to rescind the bargain. The trial court's judgment shows that this is what he thought she had done.

After the evidence had all been presented, the court and counsel engaged in a discussion in which the court sought a solution to the difficulties the parties were faced with. Some of the judge's remarks in this endeavor are used as targets by the plaintiff in attempting to upset the judgment. In such circumstances, for their own purposes, trial judges undoubtedly make remarks which may not dovetail perfectly with the ideas of counsel as to the desired result in a cause. It appears that the court was attempting to reconcile sharply conflicting evidence and contentions. It very likely appeared to him that on account of the unpleasantness which had arisen between these parties, it would be quite unbearable for them to have to live together as was formerly contemplated. At his suggestion, the defendants made an offer, later reduced to writing, which contained the following:

"* * * defendants * * * hereby offer, consent and agree to provide for the necessary and reasonable costs and keep of the plaintiff during the remainder of her natural life in the home at Mendon, Utah, where she now seems to desire to reside, * * * including the reasonable costs of a lady to assist in the care of the plaintiff if and when she so desires, and with the further privilege to the plaintiff to reside with the defendants at any time she chooses; that while plaintiff chooses to reside at Mendon, Utah, she shall have the exclusive use and possession of the home and household furniture therein, and the enclosure surrounding the house, * * * that all of the real property described may have impressed upon it a lien as security for said costs and keep of the plaintiff during the remainder of her natural life * * * ."

Based upon the original contract and this offer, the court included in its decree provision that defendants provide care for plaintiff; that the plaintiff may live with the defendants as a member of their family or, if she chooses she may have the exclusive use of the home in Mendon; that they shall pay her reasonable and necessary living expense (the court determined $75.00 per month for the present), and that they will also defray the reasonable costs of a lady to assist in the care of plaintiff if and when she so desires, and further that they will take care of medical, hospital and burial expenses for her.

The plaintiff has her choice: She can either live with the Brimms, and they represent they will do everything in their power to make life comfortable and happy, or she can choose the other alternative of living apart with sufficient provision for her needs. The judge achieved what seems to us to be a proper result. We would commend, rather than censor, him for bringing about at least a workable solution for a difficult problem, even though it be impossible to make everybody completely happy.

The plaintiff assails the judgment on the ground that the court has in effect created and substituted a new contract for the parties, and cites authority that a court has no

power under the law to do so, 45 Am. Jur. 587; *Deseret National Bank* v. *Dinwoodey et al.,* 17 Utah 43, 53 P. 215. That proposition is sound and we have no disagreement with it. What the court has done is not in conflict therewith. It has ruled that the plaintiff failed to prove a right to rescission and that the original contract is still in force. So the plaintiff still has her full rights therein. The court by its decree merely conferred upon her new and additional rights. If she does not desire to take the benefits thereof she can renounce them and rely on the original contract as provided in the decree. The increased burdens of the new arrangement fall upon the defendants who have agreed to bear them.

Appellant further complains and assigns as error "that the court found that Hilda A. Brimm is the absolute owner of the property in question," her contention being that in cases of this type, even though the deed is absolute in form, the grantee holds title as trustee for the benefit of the plaintiff during her lifetime to insure the carrying out of the obligation of the agreement, or that the property is impressed with a lien for that purpose. We are also in accord with that salutary principle of law. See *Payette* v. *Frier*, 20 Wash. 479, 55 P. 629, and also *Loar* v. *Poling*, 107 W. Va. 280, 148 S. E. 114, 64 A.L.R. 1250. But this assignment of error is without merit because in this case the court included the terms of the offer quoted herein in its decree and expressly impressed a lien upon the property to guarantee the performance by the defendants.

The appellant also maintains that the court committed error in permitting defendants at the trial of this case to amend their answer to seek a determination of the rights of the parties in the note and mortgage on the Idaho property. After the commencement of this action, but before the trial thereof, the plaintiff had commenced an action in the district court of Power County,

Idaho, in which the property is situated, to cancel and set aside the assignment of the note and mortgage to the plaintiff hereinbefore referred to. No question is raised here as to which court first took jurisdiction of the subject matter referred to and that problem is not considered. The plaintiff's claim is, that because the assignment is recorded with the county recorder of Power County, Idaho, this dispute over the validity of the assignment affects the title to the property so that the action is an action in rem, and is therefore local so that it must be tried in the county and state where the property is situated. In this regard the plaintiff is in error. The action does not involve a suit over the title to the land in question; the mere fact of the recordation of the assignment does not change that fact. The note and mortgage and the assignment thereof are personal property; the dispute is as to the ownership of the note and mortgage. The action questioning the validity of the assignment is one relating to a contract, is therefore transitory, and may be maintained in any court of competent jurisdiction where jurisdiction may be had of the defendants. 14 Am. Jur. 434; 21 C.J.S., Courts, § 38, P. 47. For further discussion and citations as to whether actions are local or transitory, see *Hogevoll* v. *Hogevoll*, 117 Mont. 528, 162 P. 2d 218; *Allen* v. *Allen*, 47 Utah 145, 151 P. 982. The dispute over this assignment is closely related to the other phases of the litigation in the instant case and the court properly permitted the parties to litigate it in this suit.

The findings and judgment of the lower court are supported by substantial, competent evidence. The judgment is affirmed. Costs to respondent.

WADE, LATIMER, and McDONOUGH, JJ., concur.

WOLFE, C. J., concurs in the result.