FIRST SECURITY BANK OF UTAH v. BURGI et ux.

No. 7622.   Decided December 6, 1952.   (251 P. 2d 297.)

See 48 C. J. S., Joint Tenancy, sec. 3. Deposit of funds in bank account in names of owner and another as creating joint tenancy. 14 Am. Jur., Cotenancy, sec. 11; 149 A. L. R. 879.

*P. LeRoy Nelson* and *Arthur Woolley*, Ogden, for appellant.

*Thatcher & Young*, Ogden, for respondents.

McDONOUGH, Justice.

This is an appeal from a judgment in an action tried by the lower court without a jury. Defendant appeals from

the trial court's ruling that a certain deed and bill of sale failed for lack of delivery. Plaintiff cross appeals as to the court's ruling on an alleged joint bank account.

On February 21, 1935, Fred Burgi, by warranty deed, conveyed to Clyde Burgi, his son, a piece of property upon which stood a store building in which Fred Burgi conducted a small grocery business. This deed was recorded on March 4, 1935. On March 3, 1936, Clyde conveyed the property back to Fred by a warranty deed which was recorded on March 5, 1936. Fred then executed a warranty deed dated November 18, 1936, which purported to convey the property to Clyde. This latter conveyance was not recorded until February 7, 1950—five days after the death of the grantor. On January 29, 1937, Fred executed a Bill of Sale which assigned all the stock of groceries, fixtures and furnishings of the grocery business to Clyde. The lower court found that there was no delivery of the deed or bill of sale; that they were executed for and with the intent that they would not be operative until after the death of the decedent, and concluded that the documents were testamentary in character and intent. Hence, the property and business were to revert to the estate to be administered by the plaintiff. The defendant appeals from this finding and conclusion.

The record also reveals that Fred opened a checking account with the Commercial Security Bank on October 16, 1934, under the name of "Burgi Grocery and Meat, Fred Burgi." On June 12, 1940, Fred Burgi and Clyde Burgi signed a card authorizing the bank to treat them as joint depositors but which did not change or mention the name of the account to be so treated. The court concluded that the original account thereby was made a joint account and that Clyde had full rights or survivorship in respect to the money deposited in such account. Plaintiff cross appeals from this ruling. We will discuss these items in the order stated.

Plaintiff admits that the deed and bill of sale were executed but contends that they were never delivered to the defendant. The testimony upon which the plaintiff relies may be briefly summarized as follows:

On February 21, 1935, when Fred Burgi conveyed the property in dispute to the defendant he also conveyed other pieces of property to various other children. In each deed he reserved to himself a life estate and each deed was promptly recorded. When the property in dispute was, after being reconveyed to Fred, again deeded to the defendant in 1936, the deed contained no reservation of a life estate and was not recorded until 14 years had passed and Fred had died. Notwithstanding the signing of the deed and the bill of sale, the deceased continued to operate the business and to live on the premises to the same extent as he had done previous to the signing of these documents. In a 1947 statement to Dun & Bradstreet, deceased gave the name of Fred A. Burgi as the owner of the business. In 1948, after deceased's marriage to his widow, he rendered another statement to Dun & Bradstreet in which he reported

"business building, title in name of Burgi and wife; home, title in name of Burgi and wife."

All sales tax returns and applications for business licenses reported the owner to be "Fred Burgi, Burgi Grocery," although the 1949 business licenses stated C. A. Burgi to be the proprietor. Deceased during his life was assessed, and paid, the real and personal property taxes levied against the property and business. Fred Burgi also managed the apartment behind the store; collected the rent therefrom; gave receipts for rent paid; purchased the merchandise for the store; cashed checks and made loans from money that was kept in a vault in the store basement. He gave no indication of retiring from the business or ceasing to operate and treat it as his own. Further, there is testimony that immediately upon decedent's death the defendant took

possession of deceased's keys; stated that there was a deed in the vault which he intended to get and record as soon as possible; and refused to allow any witnesses to be present when he opened the basement vault. It is plaintiff's contention that the defendant obtained these documents in this manner and at this time.

In contrast, the defendant and his immediate relatives testified that the deed and bill were in the possession of the defendant; that he kept them along with other valuable papers in a red chocolate box over his kitchen sink; and that deceased had made many statements to the effect that in case he should die "everything was taken care of" and that "the business belonged to the boy [defendant]."

Delivery is essentially a matter of intent. Such intent is to be arrived at from all the facts and surrounding circumstances, both before and after the date of the deed, including declarations of the alleged grantor where it appears the declarations are made fairly and in the ordinary course of life. *Stanley* v. *Stanley,* 97 Utah 520, 94 P. 2d 465; *Mower* v. *Mower,* 64 Utah 260, 228 P. 911, 914. The testimony reveals that the deceased clearly intended that the deed and bill of sale pass the property to the defendant. The facts and circumstances, however, support the trial court's finding that the deceased had no intention to pass title immediately, but that such deed and bill of sale were to become operative upon the death of the decedent. Under such circumstances the deed and bill of sale were clearly testamentary in character and intent and were inoperative since they did not conform to statutory requirements for testamentary disposition. *In re Alexander's Estate,* 104 Utah 286, 139 P. 2d 432.

While upon an appeal of a case in equity, this court may review the findings of fact as well as the conclusions of law; nevertheless, the findings of the trial court will not be set aside unless it manifestly appears that the court has misapplied proven facts or made findings clearly against

the weight of the evidence. *Gibbons* v. *Brimm,* 119 Utah 621, 230 P. 2d 983; *Stanley* v. *Stanley,* supra, and cases cited therein. The record substantially supports the lower court's findings with respect to non-delivery of the deed and bill of sale.

Defendants assign as error a ruling of the trial court which prevented defendants' attorney from testifying in the case. The trial court ruled that his testimony was privileged and inadmissible under the provisions of Sec. 104-49-3(2), U. C. A. 1943, which provides:

"(2) An attorney cannot, without the consent of his client, be examined as to any communication made by the client to him, or his advice given therein, in the course of professional employment; * * *."

Defendants' attorney noted an exception to the ruling but made no offer of proof as to what his testimony would be. All that appears in the record brought up is that the attorney, after being sworn, stated his name, his residence, and the fact that he was an attorney. He then stated that he was the attorney who prepared the warranty deed in question. He was then asked by counsel for the plaintiff whether he was employed at that time by Mr. Burgi to prepare the deed. Upon his answering in the affirmative, the recited objection to his testimony was interposed and was sustained by the trial court. In this state of the record, the ruling of the trial court was clearly erroneous. *Anderson* v. *Thomas,* 108 Utah 252, 159 P. 2d 142. It remains to consider whether the rejection of such testimony was prejudicial.

Contrary views, it seems, are entertained on this question. A number of decisions are to the effect that where the record shows that evidence has been improperly excluded, it will be presumed that the error was prejudicial to appellant unless the contrary appears. Other decisions hold that one who complains on appeal of

exclusion of evidence must show affirmatively that he was injured thereby. See 5 C. J. S., Appeal and Error, § 1677. The latter view has been taken by this court. *In re McCoy's Estate*, 91 Utah 212, 63 P. 2d 620, the decision on the point is reflected in the eleventh syllabus as follows:

"In will contest, alleged error in exclusion of evidence concerning conversation, on ground that conversation was not proper rebuttal, would not be considered, since failure of record to disclose substance of such conversation rendered it impossible to determine whether such exclusion was prejudicial, if erroneous."

Arizona has consistently followed such rule. See *Musgrave* v. *Karis*, 63 Ariz. 417, 163 P. 2d 278, and cases there cited. The rule, the reason therefor, and a recognized exception thereto, are well stated by Circuit Judge McDermott in the case of *New York Life Ins. Co.* v. *Doerksen*, 10 Cir., 75 F. 2d 96, 101, in the following language:

"Where an objection to evidence is sustained in an action at law the general rule is the record must disclose the substance of the proffered evidence before there can be a reversal because of its rejection. An offer to prove is the accepted method of bringing the substance of the evidence into the bill of exceptions. The reason for the rule is that judgments are not reversed unless error is made to appear, and without something in the record to disclose the substance of the rejected evidence, error does not appear. There are many authorities on the point."

Numerous Federal cases are then cited in support of the rule. The writer then notes an exception to the rule and states such exception in the words of Mr. Justice Harlan in the case of *Buckstaff* v. *Russell & Co.*, 151 U. S. 626, 637, 14 S. Ct. 448, 452, 38 L. Ed. 292:

"If the question is in proper form, and clearly admits of an answer relevant to the issues and favorable to the party on whose side the witness is called, it will be error to exclude it."

Palpably from the recital of the record hereinbefore made, there is nothing to indicate to this court, assuming the witness to be competent, that his evidence would be

either competent, relevant, material or favorable to the appellant.[1] In this state of the record, we cannot find that the sustaining of the objection to the competency of the witness works reversible error.

As stated hereinabove, plaintiff has cross appealed from that part of the judgment below which decrees that the checking account with the Commercial Security Bank was a joint account and became the property of Clyde upon the death of Fred. It is plaintiff's contention that the evidence in the record does not support a finding that any joint bank account was in fact created. The original bank account of Fred Burgi was entitled "Burgi Grocery and Meat, Fred Burgi". The card signed by the defendant and the deceased, which authorized the bank to treat them as joint depositors, contained a space in which the name of the account was to be written. Such space was left blank and no reference was made to the original account heading

---

[1]The entire record below relating to this issue is as follows:

"A. My name is P. LeRoy Nelson. I reside at Ogden, Utah. I am a practicing attorney before this court. I am the attorney and person who prepared Defendant's Exhibit 4.

"Mr. Young: May I at this time interrupt Mr. Nelson to ask a question on Voir Dire?

"The Court: Yes, go ahead.

"Mr. Young: Voire Dire, Mr. Nelson:

"Q. At that time, Mr. Nelson, were you employed by Mr. Burgi to prepare that deed? A. Yes.

"Q. I now object to the testimony of the witness on the ground it is privileged under the provisions of Section 104—,— I suppose I will have to get the section, it comes as rather a surprise to me, -104-49-3, Subdivision 2.

"The Court: Alright. The objection is sustained.

"Mr. Nelson: Note an exception.

"A. And I prepared a purported Bill of Sale.

"Mr. Young: May I have the same objection to that?

"The Court: Yes, and the objection is sustained.

"Mr. Nelson: Note an exception."

which was left unchanged. Under such circumstances, it is difficult to ascertain whether the deceased and defendant intended that the original account become a joint account, or whether the intention was to create a new account, separate and apart from the original account. The authorization card was the only evidence indicating any intent to create a joint account at any time. This card is in the usual form of such agreements insofar as the printed matter therein is concerned. It is entitled "Agreement regarding joint account opened under the name of ——————". The blank was not filled in. The agreement reads,

"The undersigned, joint depositors, hereby agree, each with the other and with the Commercial Security Bank, Ogden, Utah that all sums heretofore or hereafter deposited by said joint depositors or either of them, with said bank, *to their credit as such joint depositors, in the account above mentioned,* shall be opened by them jointly with the right of survivorship and be subject to the check or order or receipt of either of them or to the survivor of them, the heirs, executors, administrators or assigns of either." (Emphasis added)

This card was dated June 12, 1940. No new account was at that time or thereafter opened by the bank to which any transfer or deposit might be made. All deposits made in the bank in question and all withdrawals therefrom were credited and debited to the original account, namely the "Burgi Grocery and Meat, Fred Burgi" account. There is nothing in the record to indicate that after the signing of this card anyone other than Fred Burgi either made deposits thereto or drew checks thereon. As far as the record reveals, he continued to treat the account as exclusively his own as he had done prior to the signing of the card in question. Although nearly 10 years transpired from the date the card bears to the death of Fred Burgi, there is no evidence of any act upon the part of the defendant which would indicate that he had any present interest in the Fred Burgi account.

It is true that where an intention to create a joint account is clearly expressed in a written contract executed

by the parties, which remains unaltered, and there is no evidence of fraud, undue influence, mistake, or other infirmity, the question of intention ceases to be an issue and the courts are bound by the agreement. *Holt* v. *Bayles,* 85 Utah 364, 39 P. 2d 715, and cases cited therein. Likewise it is true that the fact that all the funds are contributed by one of the parties will not prevent the creation of a joint tenancy in the account if all of the essentials for the creation of such an estate exist. *Holt* v. *Bayles,* supra; 48 C. J. S., Joint Tenancy, § 3 (e.) (4), page 925.

These principles, however, have no application to the facts of this case. Here we have no contract which clearly expresses an intention to create a joint interest in any particular fund. The contract executed by these parties does not name an account to which it applies. The bank was not instructed as to what account was to be owned and treated jointly. No direction, so far as is shown by the evidence, was given such bank to transfer any funds to the joint ownership of the decedent and defendant, nor was any direction given to change the name of the account carried under the name "Burgi Grocery and Meat, Fred Burgi". Indeed, the fact that the depository bank neither made such change in the account on its records, nor transferred the balance in said account to a new account, is evidence of the fact that no such direction was given. Since decedent after the signing of the described card continued as theretofore to exercise complete control over the account theretofore existing and defendant committed no acts inconsistent therewith, except to immediately withdraw the entire amount on the death of the decedent, it was manifested at the time of the signing of the card, there was no intention that defendant obtain an immediate joint interest and ownership in the fund. Lacking such intent, no joint interest was created. *Christensen* v. *Ogden State Bank,* 75 Utah 478, 491, 286 P. 638; *Holman* v. *Deseret Savings Bank,* 41 Utah 340, 124 P. 765; *Columbia Trust Co.* v. *Anglim,* 63 Utah 353, 225 P. 1089. The defendant must therefore re-

'linquish the funds to the plaintiff for proper administration. The lower court judgment is affirmed as to the delivery of the deed and bill of sale, and reversed as to the bank account. Costs to respondent.

WOLFE, C. J., and CROCKETT, J., concur.

HENRIOD, Justice (concurring and dissenting).

I concur in the main opinion's affirmance of the lower court's judgment that there was no delivery of the deed and bill of sale, but dissent from the opinion's reversal of the lower court's judgment that there was a joint bank account.

WADE, Justice (dissenting).

Although I agree with the law announced in this case, I do not think it properly applied to facts here presented. I agree that generally the exclusion of evidence is not prejudicial where there is no disclosure of the substance of the proffered evidence, but this case seems to come within the exception to this rule stated in the prevailing opinion quoting from *Buckstaff* v. *Russell & Co.*, 151 U. S. 626, 637, 14 S. Ct. 448, 452, 38 L. Ed. 292, wherein Mr. Justice Harlan for the court said:

"If the question is in proper form, and clearly admits of an answer relevant to the issues and favorable to the party on whose side the witness is called, it will be error to exclude it."

I cannot agree that

"Palpably from the recital of the record  *  *  *  there is nothing to indicate  *  *  *  that his evidence would be either competent, relevant, material or favorable to appellant."

It seems clear that, had the objection not been sustained, this witness would have testified to facts relevant to the issue of the delivery of this deed which would have been favorable to the defendant who called him thus bringing it squarely within the quotation from Justice Harlan. To

me there appears no doubt that this witness would testify to facts which this witness as an attorney considered would show that a present delivery of the deed was made at the time it was executed.

Moreover, this evidence was not excluded on the ground that it would not be relevant, material or favorable to the party who called the witness, but on the ground that it was privileged. The court and all the attorneys assumed that the evidence would be relevant to the issues and would be favorable to the party who called the witness. Had the objection been sustained on the ground that there was a failure to show its materiality or that it would be favorable to the defendants, no doubt a showing of what was intended to be proved would have been made.

I also think there was sufficient evidence to show a joint account in accordance with the court's finding.