## STEVENS v. GRAY.

No. 7781.   Decided July 20, 1953.   (259 P. 2d 889.)

See 68 C.J.S. Partnership, sec. 433. Partnership accounting, proceedings to compel. 40 Am.Jur., Partnership, sec. 324; 168 A.L.R. 1109.

*Elias Hansen,* Salt Lake City, for appellant.

*George W. Worthen,* Provo, for respondent.

CROCKETT, Justice.

Edward R. Stevens in this suit sought to recover from Mr. Fearn Gray a balance of $9,216.29 he claims due him upon an accounting of a partnership in which the two engaged in the business of buying, feeding, and market-

ing cattle. Gray denied any debt; set up a somewhat detailed account showing:

| | |
|---|---:|
| Partnership costs and expenses | $144,053.16 |
| Less total income | 115,650.96 |
| Net loss | $ 28,402.20 |

Of the said loss he admits that plaintiff Stevens bore the sum of $9,340.76 but claims that he bore the balance of $19,061.44 and that Stevens should be compelled to pay defendant Gray one-half of the difference between these sums, that is $4,860.34, for which he counterclaims.

This case classifies among the most protracted litigation ever to come to the writer's attention. The period of the partnership operations was from about November 1936 to March 1939. The complaint was filed January 22, 1947 (for reasons not material here, the statute of limitations is not involved). The trial commenced June 17, 1947; after intermittent continuances, presentation of evidence was concluded on July 3, 1947. During the trial both parties discovered that their original pleadings did not reflect the actual situation and mutually agreed, with the court's consent, that amended pleadings to conform to the proof would be filed after presentation of the evidence— which was done. The court had the matter under advisement for nearly four years, and on July 25, 1951, filed a memorandum indicating his decision in the case, which simmered the account down to a judgment against the plaintiff on his complaint and in favor of the defendant on his counterclaim for the sum of $84.35.

Plaintiff pointedly, perhaps it is better said, bitterly, complains of such delay and contends that because of it the details of the many different partnership transactions and of the extensive evidence relating thereto must have passed from the memory of the trial court. Our review indicates that there may be some substance to this contention. It is appreciated that the trial court is always much occupied with the press of current business. Yet we

are constrained to observe that we fail to see how any advantage could be gained by anyone, including the trial judge, from any such long delay as occurred here. As has been wisely said, "Justice delayed is often justice denied." We regret that this delay occurred. It forms one of the unfortunate examples of "the law's delay" sometimes pointed to as a grievous fault, to which both trial and appellate courts, including this one, too frequently may be addicted, and which we who administer the law as judges, should to the utmost of our ability, consistent with due care and deliberation, seek to eliminate.

This action for an accounting is in equity and appeals to this court's scope of review, which was elaborated in *Crockett* v. *Nish*:[1]

"Since this is a suit in equity, it is our duty under Art. VIII, Sec. 9 of the Constitution, to review the facts. In examining the transcript to determine what our conclusions from the evidence will be we are to make an independent analysis of it. If at the end of that investigation we are in doubt or even if there be a slight preponderance in our minds against the trial court's conclusions we will affirm."

As indicated, the judgment of this court will not be substituted for that of the trial court merely because we might disagree with him, but we will do so only when the evidence clearly preponderates against his findings.[2]

No good purpose would be served by reciting the multifarious transactions of the firm. We limit discussion to a necessary background and facts pertaining to the principal errors assigned.

The partnership arrangements were that the parties were to divide profits and bear losses equally. Both advanced money to buy cattle, feed them and finance the enterprise; the greater portion of the active management

[1]106 Utah 241, 147 P.2d 853, 854.
[2]*First Security Bank of Utah* v. *Burgi*, 122 Utah 445, 251 P. 2d 297; *MacDonald* v. *MacDonald*, 120 Utah 573, 236 P. 2d 1066.

and actual handling and feeding of the cattle devolved upon Mr. Gray.

Stevens' main indictment against the judgment is that the trial court erred in awarding Gray 36½¢ per day per head for feeding partnership cattle. He argues that the charges now asserted by Gray in this regard are exorbitant claims devised as an after-thought to offset against Stevens in this suit for an accounting. A number of aspects of the evidence demonstrate the likelihood that there is at least some merit to this contention.

The first significant fact to be noted pertaining to this contention is that Gray, in his original pleadings, only asked for 35¢ per day for feeding, and asserted no separate charge for the hiring of labor and equipment; whereas he later amended his pleadings to ask for the higher amount plus a very considerable claim for the men, teams and wagons, which is later herein referred to. Second, although a substantial portion of the feeding expenses were for cottonseed meal and rolled barley upon which there should have been commercial records, no weighbills, invoices or other record evidence of such expenses were kept or produced by Gray; third, this is likewise true with respect to the men, teams and wagons allegedly hired. Fourth, as to the hay fed from his own stacks, which had to be hauled, although scales were easily accessible, Gray failed to weigh it or even measure it in the stacks or otherwise keep records of the amount used. As to the latter matter, perhaps no great importance can be placed thereon because it may not be reasonable to expect him to keep records as to hay hauled out of his own stacks. But as to the expenses of the feeds, and the men, etc. hired, it seems only fair and proper that, knowing he would charge these expenditures against the partnership and offset them against Stevens' expenses, he should have kept records.[3] In a partnership accounting, the partner

---

[3]See 68 C.J.S., Partnership, § 91; Story, Partnership (7th Ed.) Sec. 181.

claiming a credit in his favor has the burden of proving it.[4]

Stevens challenges the propriety of receiving secondary evidence of such expenditures. Ordinarily, if an explanation of failure to produce such records is satisfactory to the trial court it is within his discretion to receive other evidence concerning such facts. Gray evidently met this requirement because the court allowed him and another witness to testify in reference to the issue. It is true that where such records should have been kept, and are not produced, the court should look with extreme caution upon such secondary evidence. In the instant case we see no justification for interfering with the trial court's ruling, and it is not advisable here to do so or to give any extensive consideration to the matter because, when all of the evidence is evaluated, it so clearly preponderates in favor of the contentions of Stevens and against Gray's claims that the finding of 36½¢ per day for feeding cannot be allowed to stand.

The finding just referred to rests only upon testimony offered by Gray himself and one other witness, Rodney Martin. In addition to the fact above noted, that Gray had no record to support his claims, it is to be remembered that he was self-interested in the highest degree because he was being sued on the account and was seeking to offset his charges against it. Instead of giving amounts of expenditures, he based his testimony upon his estimate of the average daily ration of feed steers would consume during the fattening process: barley 10 pounds, corn 1 pound, bran 1 pound, cottonseed meal 1 pound, hay 30 pounds.

[4]*McGinnis* v. *McGinnis*, 274 Mo. 285, 202 S.W. 1087; see *Moore* v. *Malis*, 292 Ky. 106, 166 S.W.2d 52; *Bracht* v. *Connell*, 313 Pa. 397, 170 A. 297; *Sweatt* v. *Johnson*, 97 Vt. 177, 122 A. 501.

At the prices shown for these commodities, the average daily cost per steer would be about the amount allowed by the trial court. An Analysis of the testimony of Rodney Martin, Gray's only other witness on this point shows that on the basis of the actual costs of feeds testified about by him, the average daily cost would be about 24¢. He did mention other feeds without specifying either amounts or costs.

As opposed to this, Stevens presented close to a dozen witnesses, the purport of whose testimony indicates clearly that the 36½¢ allowed is grossly out of line with the then current reasonable cost of such feeding. A number of them testified to having feed programs whose average daily cost per animal was around 20¢ per day; several had feeding schedules less than 20¢. The evidence further showed that Gray himself contracted with others to feed partnership steers during this period at a lesser figure than he claims from the partnership. One such contract was with the Davis Brothers under which they fed 60 head of cattle on their ranch for 115 days at a cost to Gray of 21½¢ per day.

It is manifest that Stevens is correct in his contention that the evidence clearly preponderates against the finding of the trial court in allowing 36½¢ per day per animal and it is therefore necessary to reject such finding. Having done so, consistent with our desire, and ■ that of the parties, to see an end to this litigation, we survey the evidence to determine what a fair allowance should be. This is in accordance with the prerogatives of this court—

'Where the evidence is not in conflict or greatly preponderates one way or the other, this court [the Supreme Court] has not infrequently made its own findings."[5]

Stevens, in the argument on appeal, concedes that an amount up to 25¢ per day would be a fair charge with which

[5]*Baker* v. *Hatch*, 70 Utah 1, 257 P. 673, 676.

we agree, and adopt as a fair and reasonable allowance; such should be the finding.

The next two points of controversy can best be discussed together: The number of cattle fed by Gray, and the number he should be held to account for the sale of. It is evident that a total of 1,405 were bought by the partnership, but the accounts show that only 1,370 were █ sold, only 4 having died, 31 head were not accounted for. It is significant to note that in his claim for feeding, Gray claimed these 31 head, but in accounting for the proceeds of sale did not list them, asserting that Stevens was responsible for them. Gray claimed that these cattle were short from a herd purchased at Minersville, but the evidence shows that Gray and Stevens were there together at the time they were bought; that the cattle were shipped to Payson where they were picked up by Gray's men, and there is no showing that Stevens had any further possession or control over them. Hence, as to the missing 31 head the trial court erred in failing to charge them against Gray. The account should be corrected charging him at the rate of $84.41 per head, the average sale price of partnership cattle. But as to the number fed by Gray, the finding will not be disturbed.

Stevens further maintains that it was improper for the trial court to allow Gray for three men with teams and wagons at the rate of $5 per day per outfit during the feeding period. In support of his argument, in addition to the facts above noted, that no records were produced, that in the original counterclaim Gray made no such separate charge, and that Stevens was not in a position to get testimony to dispute this claim, Stevens presented evidence that one man could take care of about 200 head of cattle while Gray had no more than 317 feeding at any one time. However, on the basis of the testimony of Gray himself and his hired man, Willis Provstgaard, that such help was in fact hired, there is sufficient evidentiary foundation for the finding of the trial court that we would not be authorized

to vacate it and substitute a contrary finding. Consequently, the allowance of $2,677.50 to Gray for hiring such help will be allowed to stand.

The next item in order of importance is a difference of $1,000 in the amount credited to Gray. This arises from the fact that the court credited him with having paid $1,000 on a note owed by Stevens to the Commercial Bank of Spanish Fork. Early in the trial, counsel stipulated ■ that an officer of the bank if called as a witness would testify that Gray paid the $1,000. But later, the defendant admitted several times that he did not pay it. It is to be noted that the stipulation was not that Gray had paid the money, but only that a witness would so testify. Such evidence is hardly credible against Gray's own admission against his interest made repeatedly under oath. We therefore agree with Stevens' contention that the evidence so clearly preponderates against the finding that it should be changed and the credit of this $1,000 to Gray should be deleted from the account.

The court likewise erroneously credited Gray for $19.78 for lumber used in repairing feed racks on his farm. These repairs inured to Gray's benefit; consequently ■ the charge against the partnership was improper.

Stevens also questions numerous other items in the account. These pertain to pasturage fees, wintering some calves, various purchases of hay and feed, telephone and other incidental expenses and failure to charge Gray with another 12 head of partnership stock he claims the latter converted to his own use. With respect to such items, although there is dispute concerning them, under the rule of review in equity heretofore stated, we conclude they are sufficiently supported in the evidence, that the trial court's findings must remain undisturbed.

Gray himself voices dissatisfaction with the trial court for its failure to allow him compensation for the use of his

automobile on partnership business. Stevens makes no strenuous objection to the allowance of some reasonable compensation for this purpose; in fact makes sort of a left-handed admission that the evidence would justify Gray's claim that he traveled about 15,000 miles in partnership activities. Gray testified that 7¢ was the reasonable charge; this was countered by a claim of 5¢ by Stevens. In view of the fact that the trial court made no finding on the issue at all, pursuant to the prerogative of this court to make findings, as hereinabove stated,[6] it would be mandatory to make a finding in Gray's favor for at least the amount admitted as reasonable by Stevens, to wit: 5¢ per mile. On the basis of such admission, we adopt that figure as the reasonable and proper amount to be allowed. For 15,000 miles this amounts to $750 additional credit to Gray on the account. Since he is thus compensated on a mileage basis, any credit to him for specific expenditures on the automobile must be disallowed.

Stevens admits that in the judgment he is credited with two substantial items, feeding cattle, $238.54, and a $423.35 bank deposit, to which he is not entitled. Corrections with respect thereto should of course be made.

The cause is remanded with instructions to adjust the account in the various particulars hereinabove indicated, to make an accurate computation thereof, and to figure interest thereon in accordance with the stipulation as to interest made by counsel at the trial.

Costs to appellant.

WOLFE, C. J., and McDONOUGH, HENRIOD and WADE, J.J., concur.

---

[6] *Ibid.*